

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00026-CV

_____


LLOYD LAMBRIGHT AND ELAINE LAMBRIGHT,
D. G. FOOTE, MINOR LONGNION AND NITA LONGNION,
CHRIS N. MURPHY AND MARIA A. MURPHY,
JUDY KAY BURRIS (POWER OF ATTORNEY
FOR ARDLY J. CHOATE), Appellants

V.

ALLEN PAUL TRAHAN AND CHARLENE C. TRAHAN,
CHARLES M. CHAMBERS AND LOIS J. CHAMBERS, Appellees


On Appeal from the 1st Judicial District Court
San Augustine County, Texas
Trial Court No. CV-08-8968


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

## I. BACKGROUND AND PROCEDURAL HISTORY

J. D. Stanley and wife, Inez D. Stanley, were the owners of a certain tract of land in San Augustine County, Texas, located on the shores of Sam Rayburn Reservoir.[1]

By two deeds (each dated March 1, 1976), the Stanleys made conveyances from their tract.

In the first of these deeds, the Stanleys conveyed Marvin C. Goates and wife, Etta Lou Talbert Goates, and "the General Public" four contiguous easements for the purpose of "the free and uninterrupted use, liberty, privilege and easement of passing in and along certain roads and ways." These easements were described in this deed by metes and bounds in separate descriptions as Road No. 1, Road No. 2, Road No. 3, and Road No. 4. The deed went further to recite that there was conveyed "free ingress, egress, regress to and for the said MARVIN C. GOATES and wife, ETTA LOU TALBERT GOATES, their heirs and assigns and the GENERAL PUBLIC, as may be necessary or convenient at all times and seasons . . . in common with us." Except for Road No. 3, each of the descriptions called for road easements which were forty feet in width; Road No. 3 was described as being only twenty feet wide. The western terminus of Road No. 1 was a public roadway; it crossed the tract owned by the Stanleys in an easterly/westerly direction and terminated at the Sam Rayburn Reservoir. The other described Roads connected to

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Road No. 1 (Road No. 1 providing the sole access to the public roadway system), Road No. 2 projecting north from it, and Road No. 3 and No. 4 projecting south from it. Reference to this deed hereafter is sometimes called the "express grant."

The second deed was from the Stanleys to the Goateses of two parcels of land, the conveyance being made "specifically subject to the right-of-way and road easements" described in the express grant. The tracts conveyed to the Goateses did not abut any public roadway and the access to the tracts conveyed to them from the public road system was dependent on the easements conveyed by the express grant.

According to the plat shown as Plaintiff's Exhibit No. 11, at the time the controversy arose, all of the parties to the lawsuit were the sole owners of parcels carved from the tract originally owned by the Stanleys at the time of the two conveyances mentioned above. Allen Paul Trahan and wife, Charlene C. Trahan, and Charles M. Chambers and wife, Lois J. Chambers, became the owners of most of the property which was crossed by Road No. 1 and Road No. 4; Road No. 2 branched off northerly from Road No. 1 and was surrounded on both sides by and terminated on property belonging to the Chamberses. Ardly J. Choate[2] became the successor in title to the Goateses as to the tracts described in the second deed above and to another smaller tract contiguous to it. Lloyd Lambright and wife, Elaine Lambright, D. G. Foote, Minor Longnion and

---

[2]After this appeal was perfected, a suggestion of the death of Ardly J. Choate was received by this Court with a request that the case proceed with Judy K. Burris, Independent Executrix of the Estate of Ardly Joseph Choate, deceased, substituted in his stead. Pursuant to Rule 7.1(a)(1), Texas Rules of Appellate Procedure, this case will continue to proceed in the name of Ardly J. Choate. TEX. R. APP. P. 7.1(a)(1).

3

wife, Nita Longnion, and Chris N. Murphy and wife, Maria A. Murphy, became the owners of the remaining parcels of land which had been carved from the residue of the original Stanley tract; each of these parcels abutted (or were crossed by) Road No. 3.

In 1995, the Trahans, the Chamberses, the Stanleys, and Bennie Joe Whitten and wife, Frances Whitten, executed an instrument entitled "Disclaimer of Easement Rights" in which all rights of way or easements over and across a portion of a 7.90-acre tract owned by the Trahans (this tract being a portion of the property subjected to the Road No. 1 and Road No. 4 easements created in the instrument mentioned above) were disavowed and quitclaimed. However, this disclaimer specifically excluded any impact on the four roadways described in the express grant. There is nothing in the evidence to reflect what interest each of these parties had in claims to the property as of the date of the signing of this instrument.

Hereafter, the Trahans and the Chamberses are referred to jointly simply as "the Trahans" and the other owners of tracts carved from the original Stanley tract are referred to collectively as "the Lambrights."

The Trahans became convinced that the public held no valid claim to any of the roads mentioned in the express grant except for the portions thereof which had actually been used as roadbeds. Apparently based upon this conviction, they fenced all of Road No. 4 and all portions of Road No. 1 which were not actually consumed by roadbeds (this being determined by them to be a twenty-foot-wide thoroughfare).

4

After the Trahans erected fences along, and on parts of, Road No. 1 which restricted the width of the roadway to no more than the actual roadbed (about twenty feet) and erected gates that allegedly blocked access to one or more of the other roads, the Lambrights filed a suit for declaratory judgment in which they sought a judicial declaration that Road Nos. 1, 2, 3, and 4 were valid easements for the benefit of themselves and the general public which, among other things, could not be gated or blocked. This petition also specifically requested a determination that the "Disclaimer of Easement Rights" executed in 1995 did not have the effect of depriving them or the public of easement rights.

The Trahans filed a general denial and a counterclaim for declaratory judgment. In their counterclaim, the Trahans sought a judicial declaration determining: (1) that none of the four roads are public roads; (2) that because the Lambrights and their predecessors in title had used only a twenty-foot-wide portion of Road No. 1, the portion not actually used for roadway purposes had been abandoned; and (3) that Road No. 2 and a part of Road No. 1 had been abandoned.

No request for a jury having been made, the matter was submitted to the trial court as to both the facts and the law. Although no surveyor was ever called to testify, at the hearing, both parties relied heavily on a plat prepared by William Mark Birdwell, a registered professional land surveyor. This plat (Plaintiff's Exhibit No. 11) showed the boundaries of lands belonging to each of the parties to the lawsuit and the boundaries of each of the four roads as called for in the express grant, together with the location of actual roadbeds as they were then in use. The Lambrights

5

conceded that Road No. 2 (lying solely within the boundaries of property owned by the Chamberses) was not a public roadway and should be considered neither a public nor a private easement.

After a hearing on the merits, the trial court issued findings of fact and conclusions of law. Applying a strict reading, some of these findings of fact could appear to contradict themselves or be incongruous. Finding number 6 recites that there is no evidence that the parties or the public used the roads referred to in the express grant. However, finding number 7 finds that a dirt road shown on the plat in green (indicating the roadbed in use) existed at the time the express grant was made and has been in continuous use by the parties to the lawsuit and their predecessors in title. Although the roadbeds in use generally follow those described in the express grant, they diverge from them in places. One could easily presume from finding number 6 that the trial court intended to find that there has been no use of any part of the roadways described in the express grant, a fact that is contradicted by the evidence and by finding number 7 (regarding use by the parties and their predecessors in title, but not by the public as a public road).

A court of appeals is under a duty to harmonize findings whenever possible so as to avoid contradictory conclusions. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996*)*; *Luna v. S. Pac. Transp. Co.*, 724 S.W.2d 383, 384 (Tex. 1987). Therefore, we construe that finding number 6 of the findings of fact was intended to mean that neither the public nor the parties or their successors in title used the easements described in the express grant solely and entirely as they were described

6

by metes and bounds; rather, there was a continuous use of roadways which generally followed the path as described by metes and bounds in the express grant, but also diverged somewhat from those described roads.

The final judgment of the trial court (which, in the absence of any metes and bounds descriptions, in essence, incorporated Plaintiff's Exhibit No. 11 by reference) makes a number of determinations:

(a)     That none of the roadways at issue were dedicated to public use.

(b)     That Road No. 1 and Road No. 3 are easements for the use and benefit of all parties to the suit, and not for the exclusive use of any party.  The Trahans were ordered to remove all fences and gates erected by them from any part of those easements.

(c)     That there is no easement for the benefit of any person existing as to Road No. 2.

(d)     That Road No. 4 (which provides access from the north line of the tract owned by Choate to Road No. 1) is a private easement for the use and benefit of the owner of the Choate property.  The Trahans were ordered to remove the gate which blocked Road No. 4, but were permitted to construct another gate at the terminus of Road No. 4 with the north line of the Choate property so long as Choate was given the right to travel through the gate.[3]

(e)     The descriptions of the easements shown as Road No. 1 and Road No. 4 were amended to more closely conform to the use on the ground.

---

[3]As noted previously, the judgment contains no descriptions of any of the road easements other than by reference to Plaintiff's Exhibit No. 11.

7

On appeal, the Lambrights contend that the trial court erred in refusing to find the three of the roadways at issue to be public roads (acquiescing in the finding that Road No. 2 was not a public roadway). The Trahans filed a cross-appeal, alleging nine points of error, which are grouped as follows: (1) the trial court erred in finding, both in the final judgment and in conclusion of law number 8[4] (i.e., that Road No. 1 was declared to be forty feet wide); (2) the trial court erred in finding that the portion of Road No. 1, which is situated east of the intersection of Road No. 1 and Road No. 3 has been used by the parties; (3) there is no evidence to support the trial court's finding that Choate and his family have, "over the years," used Road No. 4 for access to their property from Road No. 1, and such finding is against the great weight and preponderance of the evidence; (4) there is no evidence to support the court's finding that the roadway used by Choate and his family has a width of forty feet, and such finding is against the great weight and preponderance of the evidence; (5) there is no evidence to support the trial court's conclusion of law[5] purporting to recognize a forty-foot easement to the Choate property along Road No. 4; and (6) the trial court erred in ordering Trahan to move gates and fences which deny access to the

---

[4]Conclusion of law number 8 states that "[t]he dirt road purporting to be Road No. 1 on Plaintiff's Exhibit 8 is declared to be 40' in width with the northern boundary of said road to coincide with the northern boundary of the 'green road' and to extend southerly for a uniform width of twenty feet (40') [sic]."

[5]Conclusion of law number 10 states that "[t]he roadway easement to the Ardley [sic] J. Choate property, purporting to be Road No. 4 on the conveyance, is recognized as a roadway easement and shall be forty feet (40') in width centered on the center line of the most northerly chicken house on the Choate property as shown on Plaintiff's Exhibit No. 11."

Choate property via Road No. 4.[6]  Significantly, neither of the parties challenged the authority of the trial court to relocate the roads described in the express grant to more closely conform with the location of the roadbeds on the ground.

For all practical purposes, the trial court determined that all of the easements set out in the express grant (except for Road No. 2) were (and remained) private easements for the use and benefit of all of the litigants, their heirs and assigns, but, because there had been no acceptance of a dedication by the public, these were not public roads.  The trial court further concluded that with the exception of Road No. 4, the easements as determined could not be blocked by any gate and enjoined their blockage.

## II.      ANALYSIS

### A.      Are the Roadways in Question Public Roads?

The trial court concluded that "[t]he roadways described in the conveyance are not road easements dedicated to use by the public."  In their sole point of error, the Lambrights contend that the trial court erred in so concluding.  The relevant issue is whether a dedication of the roads to public use was fully accomplished; the resolution of this issue rests on the existence of the facts underlying this conclusion.  In arriving at this conclusion, the trial court found that "[t]here is no evidence that the parties or the public accepted the roads referred to in the conveyance."  *See*

_____

[6]Conclusion of law number 13 states that "Defendants should be ordered to remove, at their sole expense, the gate and fence which restricts the access of Ardly J. Choate and his family to their property by passage on what has been identified in the conveyance as Road No. 4."

9

*Viscardi v. Pajestka*, 576 S.W.2d 16, 19 (Tex. 1978) (whether public right of way has been acquired by dedication is generally question of fact).

Findings of fact entered in a case tried to the bench "are of the same force and dignity as a jury's answers to jury questions." *.39 Acres v. State*, 247 S.W.3d 384, 387 (Tex. App.—Texarkana 2008, pet. denied) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). We review the findings of fact by the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994)).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We will credit evidence favorable to the finding of the court if a reasonable judge acting as a fact-finder could, and will disregard contrary evidence unless a reasonable judge could not when making this determination. *Id.*; *Ramsay v. Tex. Trading Co.*, 254 S.W.3d 620, 625 (Tex. App.—Texarkana 2008, pet. denied). As long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for the judgment of the trial court. *Ramsay*, 254 S.W.3d at 625 (citing *Wilson*, 168 S.W.3d at 822). In this case, the court is the sole judge of the credibility of the witnesses and weight given to their testimony. *Id.* (citing *Wilson*, 168 S.W.3d at 819). Although we consider the evidence in a light most favorable to the

10

challenged findings, indulging every reasonable inference that supports them, we may not disregard evidence that allows only one inference. *Id.*

When considering a factual sufficiency challenge to a jury's verdict, we must consider and weigh all of the evidence, not just that evidence which supports the trial court's judgment. *Id.* We will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). Because we are not a fact-finder, we will not pass on the witnesses' credibility or substitute our judgment for the judge's, even if the evidence would clearly support a different result. *Id.* at 407.

We find it helpful to clarify the description of the four roads at issue. The plat depicting these roads (Plaintiff's Exhibit No. 11) shows a "green road" and a "red road" (these being called by those names because the drafter of the plat used green ink to portray the road location of the roadbeds in existence and red ink to portray the location of the four roads described by metes and bounds in the express grant). For the most part, the green road falls within the boundaries of the red road on the plat.

The road leading into the property from Old Farm to Market Road 705 is depicted on the plat as "Road No. 1." As shown in red, this road (as described in the express grant) has a width of forty feet. Much of the area contained in the easements shown in red are overgrown and have not been cleared of trees and underbrush. As shown drawn in green (i.e., as it currently exists on the

11

ground), Road No. 1 appears to be a narrow road.[7] The Trahans fenced portions of Road No. 1 and, as a result, this road was, in some places, narrowed even more than the previously-established roadbeds.

The Lambrights stipulated at trial that Road No. 2 is not a public road and made no claim to easement rights upon it.

Road No. 3, as depicted in both red and green, is twenty feet in width. This dirt road provides access to the property owners whose tracts abut the Sam Rayburn Reservoir. The location of this road as called for in the express grant differs from the use of the road as reflected on the plat; the actual use parallels the called location, but is situated east of and abutting the location described in the express grant.

Road No. 4 is depicted only as a "red road" in the plat. However, this short road segment leading from Road No. 1 to the Choate property was found by the court to have been used for the past thirty years. As depicted on the plat, Road No. 4 as described in the express grant is forty feet wide. The Trahans installed a gate across this road, thus denying the Choates access to their property along Road No. 4. The Trahans also placed a fence approximately one foot in front of the Choates' chicken house. At the time of trial, although the east line of the Choate property abuts Road No. 3 (thereby providing access to the Choate property from that direction), there was

---

[7]The record does not clearly state the width of this road. The plat indicates that Road No. 1 (green version) is not forty feet wide. However, Trahan indicated that he intended to narrow the easement to twenty feet. In some areas, the fences were placed four to five feet into the existing road.

12

no access to the north line of the Choate property by using Road No. 4 because that had been blocked by the Trahans' fence.

Finally, the eastern end of Road No. 1, lying east of its intersection with Road No. 3 (depicted only as a "red road" on the plat), provides access to the Sam Rayburn Reservoir. The Trahans installed a gate across this section of the road.

The Lambrights contend that because the evidence established that the roadways in question[8] were subject to an express dedication to the "general public" in the express grant and because the roadways were accepted and used by the public, the trial court erred in concluding that Road No. 1, Road No. 3, and Road No. 4 were only private road easements rather than public roads.[9]

Dedication of a roadway may occur as a result of either an express grant or dedication or by implication. *Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 503 (Tex. App.—Texarkana 2002, pet. denied); *Gutierrez v. County of Zapata*, 951 S.W.2d 831, 837–38 (Tex. App.—San Antonio 1997, no writ). Generally, an express dedication is accomplished by deed or written instrument. *Broussard v. Jablecki*, 792 S.W.2d 535, 537 (Tex. App.—Houston [1st Dist.] 1990, no writ). The case at bar involves just such an express dedication, as evidenced by the conveyance of the right of passage on and across four roadways;

---

[8]The Lambrights stipulated at trial that there was no evidence of use by the public of Road No. 2. Therefore, the Lambrights contend on appeal that only Road No. 1, Road No. 3, and Road No. 4 were public roads.

[9]No party contends that Road No. 2 is a public road.

under the terms of the express grant, this right was not given solely to the grantees in the instrument, but also to the general public.

The question before us is not, therefore, whether a dedication of the roadways in question was tendered by the express grant but, rather, whether there was an acceptance by the public of that tender. In order to complete the creation of a public easement by an express dedication of property, as here, there must be acceptance of the dedication by or on behalf of the public. *See Maddox v. Maxwell*, 369 S.W.2d 343, 347 (Tex. 1963); *Gutierrez*, 951 S.W.2d at 838. In the seminal case of *Viscardi*, the Texas Supreme Court noted that the courts of this State do not require a formal or express acceptance of a dedication by the public; rather, "[a]n implied acceptance by the public is sufficient." *Viscardi*, 576 S.W.2d at 19. That is, by general and customary use, the public can accept a dedication. *Id.*

It is undisputed that San Augustine County has never provided any maintenance for any part of any of the roadways at issue. Rather, the property owners who use the roads have maintained those roads. Trahan testified that San Augustine County never recognized or accepted these roads as public easements and there was no proffer of any evidence of a formal acceptance of the dedication by the San Augustine County Commissioners' Court. Judy Kay Burris (daughter of and attorney in fact for Choate) testified that the "general public" used the road that comes off of Old Farm to Market Road 705[10] and that the use of Road No. 1 is not limited

---

[10]Described as "Road No. 1" on the plat of the subject property.

14

solely to people who own the property serviced by the road. Foote testified that there has been "a lot of traffic" coming in on Road No. 1. Lambright testified that the "general public" uses Road No. 3 as well.[11] Road No. 3 has been used by census takers, ambulance drivers, and police. (One observes from the plat that in order for such persons to use Road No. 3, they must first travel Road No. 1 to get to it.) Further, Lambright has "seen people" using the road that goes to the Choates' property.[12]

The courts of this State have held for a very long time that the acceptance by the public need not be express; rather, an implied acceptance by the public is sufficient. *Gilder v. City of Brenham*, 67 Tex. 345, 3 S.W. 309 (1887). Public roadways can be created by both express and implied dedication of the land to public use. *Jezek v. City of Midland*, 605 S.W.2d 544, 548–49 (Tex. 1980). The evidence here in support of the proposition that these roadways have been accepted by the public is generally limited to rather vague testimony that they are used by the "general public," including census takers, ambulance drivers, and police. In fact, Road No. 1 is marked with a "private road" sign at its western terminus (i.e., its entrance from the public roadway system). The formal acceptance of the dedication of a roadway by a governmental entity is relatively easy to determine because it is done by action of that governmental entity and monumented by such things as minutes of meetings. Acceptance by public use has no such bright line determinative act. The required use of a roadway by the public need not be for any specific

---

[11]Described as "Road No. 3" on the plat of the subject property.

[12]Described as "Road No. 4" on the plat of the subject property.

15

length of time and a short period of use generally is sufficient, so long as the use continues for such a period that it may be inferred that the public desires to accept in perpetuity the offer of use. *See Stein v. Killough*, 53 S.W.3d 36, 42 n.2 (Tex. App.—San Antonio 2001, no pet.); *Schwertner v. Jones*, 456 S.W.2d 956, 959 (Tex. Civ. App.—Austin 1970, no writ); *City of Dallas v. Schawe*, 12 S.W.2d 1074, 1076 (Tex. Civ. App.—San Antonio 1928, writ dism'd).

One notes that the use of a roadway by law enforcement officers, ambulance drivers, and census takers is not conclusive as to the intent of those members of the public to accept a dedication of a roadway as a public roadway. In similar fashion, such officials might use a hallway in an apartment building for access to an apartment within it without any thought that the hallways have been dedicated to public use. The trier of fact must infer the intent of the members of the public from its actions. Apparently, the trial court here did not infer that the public's use of these roads in these circumstances as described by the evidence sufficiently showed the intention of the public to accept them as public roads. Given the paucity of evidence on the issue of public acceptance and the fact that the burden to prove their acceptance lay with the proponents, we believe a "reasonable and fair-minded" fact-finder could conclude that the proof of acceptance of the roadways by public use failed to meet the required burden. *See Wilson*, 168 S.W.3d at 827. We further conclude that the judgment is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Ramsay*, 254 S.W.3d at 625.

We overrule this point of error.

16

**B.** **The Trial Court Did Not Err in Finding the Width of Road No. 1 and Road No. 4 to Each be Forty Feet or in No Finding of Abandonment.**

On cross-appeal, a great portion of the complaints raised by the Trahans center upon the actual usage of the roadways contained in the express conveyance. They dispute the finding of the trial court that the width of Road No. 1 and Road No. 4 to be forty feet, contend that there has been no use of the portion of Road No. 1 which extends easterly from the intersection of Road No. 1 and Road No. 3 to Sam Rayburn Reservoir, and maintain that the court's finding that the Choate family has used Road No. 4 "over the years" is not supported by the evidence. Apparently, these arguments are intended to buttress their contention that by using only a part of the easements and not their full length and width, the proponents of the easements have effectively abandoned the portions not used. However, it has long been a

> universally recognized rule that, while abandonment may be established, like any other fact, by circumstances, yet those circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner. The material question is the intention to abandon, and that intention must be established by clear and satisfactory evidence. Mere nonuser of an easement will not extinguish it.

*Dallas County v. Miller*, 140 Tex. 242, 245, 166 S.W.2d 922, 924–25 (1942). The intent to abandon an easement "must be established by clear and satisfactory evidence." *Milligan v. Niebuhr*, 990 S.W.2d 823, 826 (Tex. App.—Austin 1999, no pet.). As with any other affirmative plea, the burden of showing abandonment of the rights in the easement rested on the Trahans. Other than showing that the actual roadbed on Road No. 1 was only some twenty feet in width and

17

that a portion of Road No. 1 had not been cleared at all, they provided no evidence of an intent to abandon any part of any of the roads described in the express grant. As a practical matter, there is ample evidence of use of at least parts of each of Road Nos. 1, 3, and 4 to sustain the judgment of the trial court.

Further, "[i]t is well settled that the rules which control the courts in the construction of easements are, in general, the same as those applied to the construction of deeds and other written instruments." *Stephenson v. Vastar Res., Inc.*, 89 S.W.3d 790, 792 (Tex. App.—Corpus Christi 2002, pet. denied); *Knox v. Pioneer Natural Gas Co.*, 321 S.W.2d 596, 602 (Tex. Civ. App.—El Paso 1959, writ ref'd n.r.e.). The express grant described the width and breadth of the easements upon which the Lambrights relied and the Lambrights used at least a portion of each of Road Nos. 1, 3, and 4 as access to their respective tracts without interruption (until the Trahans fenced off Road No. 4 in its entirety). Accordingly, they were in possession of the easement rights conveyed under the express grant. A person in possession of a portion of lands conveyed to him is considered in law to have had constructive possession of all the land embraced within the description of his property as described in the registered deed under which he claims, although he was in actual possession of only a part of the lot described. *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 641 (Tex. App.—Tyler 1983, writ ref'd n.r.e.); *Love v. McGee*, 378 S.W.2d 96, 98 (Tex. Civ. App.—Texarkana 1964, writ ref'd n.r.e.). Under the constructive possession doctrine, therefore,

18

the Lambrights remained in possession of every part of all of the four roads described in the express grant.

On appeal, a trial court's conclusions of law are reviewed de novo and will be reversed only if they are erroneous as a matter of law. *Villagomez v. Rockwood Specialties, Inc*., 210 S.W.3d 720, 727–28 (Tex. App.—Corpus Christi 2006, pet. denied). We will uphold the trial court's conclusions upon any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Those conclusions cannot be challenged for factual insufficiency; however, we may review the trial court's legal conclusions drawn from the facts to determine their correctness. *See id*.

The Trahans claim that all of the evidence showed the roads used since 1976 have never been wider than twenty feet. Even if that is true, it is not determinative of the issue here. The portion of the granted easement which was actually put to use does not dictate the width of the easement; the granted easement does.

We overrule this cross-point of error.

### C.     The Trial Court Appropriately Ordered the Removal of Gates.

The Trahans complain that there is no evidence to support a finding or ruling that they are required to remove gates and fences from any of the easements which were found to exist on any of the roadways.

19

In so doing, the Trahans continue to ignore the express grant which was the genesis of the rights upon which the Lambrights rely. That conveyance specifically conveys the grantees "the free and uninterrupted use, liberty, privilege and easement of passing along" the roads described therein as Road Nos. 1, 2, 3, and 4. (Note that the Lambrights did not contest the Trahans' contention that there was no easement over Road No. 2 and the trial court found none.) When traveling on the roads, a gate is an interruption which hinders the free passage along those roads. There is no merit in the claim that this prohibition against gates finds no basis in the evidence.

We overrule this point of error.

**D.**      **Another Means of Access for Choate Does Not Negate Express Grant.**

The Trahans further argue that since there is access to the Choate property via Road No. 3, the court should not have determined that they should also have access via Road No. 4, contending further that Road No. 4 was now seldom, if ever, used.

In order to establish an implied easement by necessity, a party must establish (1) unity of ownership of the dominant and servient estates prior to severance, (2) the necessity of a roadway, and (3) that the necessity existed at the time the estates were severed. *Daniel v. Fox*, 917 S.W.2d 106, 111 (Tex. App.—San Antonio 1996, writ denied). The way of necessity must be more than one of convenience; in other words, if the owner of the land can use another way, he cannot claim by implication to pass over land of another to get to his own. *Duff v. Matthews*, 158 Tex. 333, 311 S.W.2d 637, 640 (1958).

20

This doctrine of implied easement by necessity must have been the guiding star for the pleading that Road No. 4 should be dissolved because the Choate property abuts another roadway. However, it is not a valid argument because the easement rights belonging to Choate do not arise by way of necessity but, rather, by the express grant. The two means of access to the Choate property existed when the Choate property was carved from the same tract now owned by the Trahans. The existence of another means of access to the Choate property and the frequency of the use of Road No. 4 as access to the Choate property are just simply not relevant to the findings and orders made by the trial court pertaining to Road No. 4. We do not reiterate the previous discussion of abandonment of the easement.

We overrule these points of error.

## III. CONCLUSION

We affirm the judgment of the trial court.

Bailey C. Moseley
Justice

Date Submitted: August 2, 2010
Date Decided: September 2, 2010

21