

# NUMBER 13-23-00436-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN WILLIAM JOHNSON,                                             Appellant,

v.

TOWN OF FULTON,                                                    Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW
## OF ARANSAS COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Peña**
**Memorandum Opinion by Chief Justice Contreras**

Appellant John William Johnson[1] challenges the permanent injunction issued in

favor of appellee Town of Fulton. By three issues, Johnson argues that the trial court

---

[1] Appellant's middle name is spelled "Williams" on his notice of appeal and other appellate filings. However, all the trial court documents in the appellate record, including the trial court's permanent injunction, spell his middle name "William." For consistency with the trial court order and filings, we will use the latter spelling.

erred in (1) concluding that it has subject matter jurisdiction, (2) granting Fulton's motion for summary judgment because a genuine issue of material fact exists, and (3) awarding Fulton attorney's fees under the Uniform Declaratory Judgments Act (UDJA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. We affirm in part and reverse and render in part.

## I. BACKGROUND

On February 28, 2022, Fulton filed a petition alleging Johnson interfered with the general public's use of Casterline Drive, a dedicated public right-of-way in Fulton running north to south along Aransas Bay. Casterline Drive lies on the western boundary of Johnson's property. According to Johnson's affidavit of heirship, he owns "All of the Water[f]ront Reserve lying east of Lot Nos. [one through five], in Block No. One (1), Townsite of Fulton . . . together with thirty (30) feet closing of Casterline Drive[.]" Fulton does not dispute Johnson's fee in the underlying property. Below is a map of the portion of Casterline Drive at issue and showing Fulton's map of the right-of-way:[2]

---

[2] The following is a diagram made by this Court for reference only. The image was constructed from Google Maps and the landmarks depicted may not be accurate.



Fulton explained that Casterline Drive comprises a sixty-foot-wide easement, but only the westerly thirty feet is paved and exists as a road. It alleged that "Johnson has a building encroaching on the eastern portion of Casterline Dr[ive]," and per "Johnson's request," Fulton enacted Ordinance 252, which closed and abandoned the unpaved, easterly thirty feet of the right-of-way. Though Johnson's building rightfully existed on the easterly unpaved portion of the street, Fulton claimed that Johnson was blocking the entire width of the paved portion of Casterline Drive between Palmetto and Broadway.

Fulton alleged that Johnson erected a metal fence and placed "concrete rip rap" on the paved portion of the right-of-way, violating penal code § 42.03. *See* TEX. PENAL CODE ANN. § 42.03(a)(1) ("A person commits an offense if, without legal privilege or authority, he intentionally, knowingly, or recklessly: . . . obstructs a [public] highway [or] street . . . ."). According to the petition, Johnson was directed to remove the barriers by Mayor Kelli Cole and Police Chief Rick McLester, but he continued to block access to the street. Fulton requested temporary and permanent injunctive relief, as well as declarations stating that (1) Johnson's actions constitute a nuisance and (2) its easement in the easterly thirty feet of the road was not abandoned because Johnson never paid Fulton $10.00 in consideration as required by Ordinance 252.

On March 15, 2023, Fulton filed a motion for summary judgment. Johnson filed a response on May 18, 2023, and argued that there were genuine issues of material fact: (1) as to "the boundaries of the abandoned easement," and (2) as to whether Fulton "abandoned the easement[,] forfeit[ing] any right to use the subject area." He first argued that Block 1, the block west of his property, was "incorrectly measured" as being 150 feet wide instead of 125 feet. Fulton paved the street and designated it as a public right-of-way based on surveys conducted after 1945, which measured the width of Block 1 as 150 feet. However, Johnson's designated expert Ronald Brister, a registered professional surveyor, testified that a survey conducted in 1906 showed Block 1 to be 125 feet in width.[3] Brister noted that, though Casterline Drive was originally platted based on a county map from 1888, that map did not contain measurements of Block 1. In Brister's

_____

[3] The 1906 survey was apparently attached as an exhibit to Johnson's response but does not appear in the appellate record.

4

opinion, the 1906 survey controlled, and Casterline Drive therefore improperly encroached twenty-five feet onto the western edge of Johnson's property. Johnson contended that, because of the surveys' discrepancies regarding the width of Block 1, the location of the Casterline Drive right-of-way was an issue to be decided by the factfinder.

Johnson next argued that the location of the easterly thirty feet of right-of-way abandoned by Fulton in Ordinance 252 was a disputed fact issue. The ordinance, passed on September 18, 2012, states that Fulton abandons the "Easterly thirty Feet [] of Casterline Drive lying between Block 1 and the waterfront East of Block 1" and such portion of the street "is hereby closed and abandoned as a public right-of-way . . . ." Johnson argued that, because of this abandonment, the "easterly thirty feet" reverted to his control because he owns all the waterfront property east of Block 1. *See Shaw v. Williams*, 332 S.W.2d 797, 800 (Tex. App.—Eastland 1960, writ ref'd n.r.e.) ("An easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment." (quoting 28 C.J.S. Easements § 54, p. 718)). Johnson also pointed to deposition testimony from Fulton's expert, Jerry Brundrett, who is the Aransas County Surveyor and surveyed Casterline Drive for the ordinance. Brundrett opined that Fulton had the ability to abandon its easement in the road, and once abandoned, the property "reverts to the adjacent owner or parent tract from which it was severed." Johnson argued that, based on the "correct" location of the right-of-way per the 1906 survey, the abandoned easterly thirty feet actually lays twenty-five feet further west. Thus, the western boundary of his property should rightfully extend by fifty-five feet and encompass most of the paved portion of Casterline Drive.

5

Fulton responded to Johnson's argument in a supplemental motion for summary judgment. Fulton argued that the location of Casterline Drive was not in dispute. It pointed to Brundrett's affidavit, which stated that "[t]he 1878 Town of Fulton plat and the Paul McCombs 1888 plat both scale Block 1 to be 150.0 feet in [width]" and "the preponderance of the surveys" conducted from 1945 to the present show this block as being 150 feet in width. Fulton also argued that the ordinance clearly abandoned only the easterly unpaved half of the road, leaving the westerly, paved half as a public right-of-way. It argued that Johnson had no right to block off the paved portion of the street. Citing Brundrett's deposition testimony, Fulton also reiterated that the sole purpose of the ordinance was to allow Johnson to keep a building that encroached on the public right-of-way without moving the building or Johnson's property line.

After a hearing, the trial court granted Fulton's motion for summary judgment and issued a permanent injunction, enjoining Johnson from obstructing the portion of Casterline Drive at issue. The trial court also issued a declaration that "the street in question is a public street" and it assessed $28,306 in attorney's fees against Johnson. Johnson filed a motion for new trial and motion to set aside the attorney's fees award, which the trial court denied. This appeal followed.

## II.        SUBJECT MATTER JURISDICTION

By his first issue, Johnson argues that the trial court erred in concluding that it had subject matter jurisdiction because Johnson filed a plea to the jurisdiction which the trial court did not rule on. Johnson also argues Texas Government Code section 25.0003(b) limits a county court's power to decide the issues in this case. *See* TEX. GOV'T CODE ANN. § 25.0003(b).

6

## A.    Standard of Review & Applicable Law

Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). A plaintiff has the burden to affirmatively demonstrate the trial court's jurisdiction. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). Subject matter jurisdiction cannot be waived and can be raised at any time, even for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993).

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). The plea challenges the trial court's subject matter jurisdiction over a pleaded cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When assessing a plea to the jurisdiction, our analysis begins with the live pleadings. *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012). We may also consider evidence submitted to negate the existence of jurisdiction—and we must consider such evidence when necessary to resolve the jurisdictional issue. *Id.*

The jurisdiction of county courts at law are generally prescribed by Texas Government Code § 25.0003. *See* TEX. GOV'T CODE ANN. § 25.0003. Under § 25.0003(b), "[a] statutory county court does not have jurisdiction over causes and proceedings concerning roads, bridges, and public highways and the general administration of county business that is within the jurisdiction of the commissioners court of each county." *Id.* § 25.0003(b). Each statutory county court also has a county-specific jurisdictional statute.

*See id.* § 25.0041–.2512. Section 25.0062, the county-specific jurisdictional statute for the trial court in this case, states:

> In addition to the jurisdiction provided by Section 25.0003 and other law, a county court at law of Aransas County has concurrent jurisdiction with the district court in: . . . civil cases in which the matter in controversy exceeds the maximum amount provided by Section 25.0003.

*Id.* § 25.0062(a)(3).

## B.      Analysis

Johnson first argues that the trial court erred in concluding that it had subject matter jurisdiction because it did not consider "any evidence" in response to his plea to the jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000) (concluding that a trial court deciding a plea to the jurisdiction must consider evidence "when necessary to resolve the jurisdictional issues raised"). However, Johnson does not dispute any of the underlying facts establishing the trial court's subject matter jurisdiction over this case. Johnson's only jurisdictional challenge on appeal has to do with the application of Texas Government Code § 25.0003(b). *See* TEX. GOV'T CODE ANN. § 25.0003(b). Because Johnson's objection to the trial court's subject matter jurisdiction goes to a matter of law, Fulton was under no burden to produce evidence in response to Johnson's plea to the jurisdiction. *See Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 226. We overrule this sub-issue.

Next, Johnson argues that the trial court does not have jurisdiction over this case because it is a statutory county court, and under § 25.0003(b), statutory county courts do not have jurisdiction over "causes and proceedings concerning roads." *See* TEX. GOV'T CODE ANN. § 25.0003(b). Fulton argues that Aransas County's county-specific jurisdictional statute, § 25.0062, vests the trial court with jurisdiction because it grants

8

"concurrent jurisdiction with the district court in . . . civil cases in which the matter in controversy *exceeds the maximum amount provided by [§] 25.0003*." *Id.* § 25.0062(a)(3) (emphasis added). While the parties agree that the amount in controversy in this case does not exceed $250,000—"the maximum amount provided by [§] 25.0003"—Fulton argues that § 25.0062 expands the jurisdiction of the Aransas County Court at Law to all civil cases regardless of amount in controversy. *See id.* §§ 25.0003(c)(1), .0062(a)(3).

The Texas Supreme Court has held that "the county-specific jurisdictional statutes are 'independent and cumulative' of jurisdiction conferred by Section 25.0003" and allow statutory county courts to hear cases otherwise barred by other sections in the Texas Government Code. *Ditech Servicing, LLC v. Perez*, 669 S.W.3d 188, 192 (Tex. 2023). In *Ditech*, respondent Jerry Perez challenged the trial court's subject matter jurisdiction over Ditech's counterclaim for judicial foreclosure. *Id.* Perez argued that by ruling on the foreclosure issue, the trial court was deciding a question of title over which it had no jurisdiction under § 26.043 of the Texas Government Code. *Id.*; *see also* TEX. GOV'T CODE ANN. § 26.043(2), (8) ("A county court does not have jurisdiction in . . . a suit for the enforcement of a lien on land . . . [or] a suit for the recovery of land.").

The Court looked at § 25.1102, the county-specific jurisdictional statute for the trial court, which read in pertinent part: "In addition to the jurisdiction provided by [§] 25.0003 and other law, a county court at law in Hidalgo County has concurrent jurisdiction with the district court in . . . civil cases in which the matter in controversy does not exceed $750,000 . . . ." *Ditech Servicing*, 669 S.W.3d at 191. The Court held that the words "[*i*]*n addition to* the jurisdiction provided by [§] 25.0003" meant that the trial court's jurisdiction was not subject to the limitations of § 25.0003. *Id.* at 192 (emphasis in original).

Then, the Court held that "[b]y its plain terms," § 25.1102 granted Hidalgo County Courts at Law broad jurisdiction over civil cases, limited only by the amount in controversy of $750,000. *Id.* at 193. It concluded that, even though county courts of law were generally divested of jurisdiction over suits for title of land under § 26.043, "[s]uits for the enforcement of a lien on land or for the recovery of land are 'civil cases' over which a district court has jurisdiction." *Id.* at 193–94. The Court also found it significant that § 25.1102 did not "expressly incorporate [§] 25.0003's limitations" as did other county-specific jurisdictional statutes. *Id.* at 192 (comparing § 25.1102 to Wichita County's county-specific jurisdictional statute which "granted Wichita County courts at law concurrent jurisdiction with the district court '[e]xcept as provided by Section 25.0003'"). Thus, because the case at issue was civil and within the $750,000 amount in controversy, the trial court had jurisdiction over Ditech's judicial foreclosure counterclaim, notwithstanding § 26.043. *Id.* at 192–94.

Similarly, in *AIC Management v. Crews*, the Court held that Harris County's specific jurisdictional statute, which granted Harris County Courts at Law jurisdiction to "decide the issue of title to real or personal property," conferred jurisdiction over the case's title dispute even though the value of the land at issue exceeded the maximum amount in controversy under § 25.0003. 246 S.W.3d 640, 643–44 (Tex. 2008). The Court held that Harris County's county-specific jurisdictional statute conferred jurisdiction "in addition to [the] general concurrent jurisdiction described in [§] 25.0003(c) and [was] not dependent upon the amount in controversy." *Id.* at 644.

Like § 25.1102 in *Ditech*, § 25.0062 states that "[i]n addition to the jurisdiction provided by [§] 25.0003" the trial court in this case has concurrent jurisdiction with the

10

district court to hear "civil cases" above the $250,000 amount in controversy under § 25.0003. *See Ditech Servicing*, 669 S.W.3d at 191–92. *Compare* TEX. GOV'T CODE ANN. § 25.1102(a)(2), *with id.* § 25.0062(a)(3). And, as in § 25.1102 from *Ditech*, § 25.0062 does not expressly incorporate § 25.0003's limitations. *See Ditech Servicing*, 669 S.W.3d at 192. *Compare* TEX. GOV'T CODE ANN. § 25.1102, *with id.* § 25.0062. Though § 25.0062 provides jurisdiction for civil cases in which the amount in controversy "exceeds" $250,000 and the amount in controversy in this case does not exceed that amount, § 25.0062 is "'independent and cumulative' of jurisdiction conferred by Section 25.0003." *See* TEX. GOV'T CODE ANN. § 25.0062; *Ditech Servicing*, 669 S.W.3d at 192–94; *AIC Mgmt.*, 246 S.W.3d 643–44; *see also Kaufman Cnty. Comm'rs Ct. v. Lassiter*, No. 05-18-01059-CV, 2019 WL 2710754, at *3–5 (Tex. App.—Dallas June 28, 2019, pet. denied) (mem. op.) (holding that the trial court's jurisdictional statute, § 25.1312, controlled over § 25.0003(b), granting the trial court jurisdiction over suits concerning roads). We agree with Fulton that § 25.0062 expands the jurisdiction of the Aransas County Court at Law to all civil cases regardless of amount in controversy.

Because this suit is a civil case which fulfills the amount in controversy requirement under § 25.0062, we conclude that the trial court has subject matter jurisdiction notwithstanding § 25.0003(b). *See* TEX. GOV'T CODE ANN. §§ 25.0003(b), .0062(a)(3); *Ditech Servicing*, 669 S.W.3d at 192–94; *AIC Mgmt.*, 246 S.W.3d 643–44. We overrule Johnson's first issue.[4]

---

[4] Fulton argues in the alternative that § 25.0003(b) merely bars the trial court from hearing suits concerning roads that are "within the jurisdiction of the commissioners court of each county." *See* TEX. GOV'T CODE ANN. § 25.0003(b). Fulton contends that "jurisdiction" of Casterline Drive passed from Aransas County to Fulton after Fulton was incorporated, and therefore, Casterline Drive is not under the jurisdiction of the Aransas County Commissioners' Court. Because we resolve this issue in favor of Fulton, we need not address this alternative interpretation of § 25.0003(b).

### III.      SUMMARY JUDGMENT

By his second issue, Johnson argues that the trial court erred in granting Fulton's motion for summary judgment because a genuine issue of material fact exists as to whether Fulton's easement encompasses the portion of Casterline Drive at issue.

### A.     Standard of Review & Applicable Law

We review the grant or denial of a summary judgment de novo. *Scripps NP Operating, LLC v. Carter*, 573 S.W.3d 781, 790 (Tex. 2019). The movant for traditional summary judgment carries the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). "If a movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment." *Bryant v. Baker*, 580 S.W.3d 408, 412 (Tex. App.—Houston [1st Dist.] 2019, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)). The nonmovant can meet its burden if its evidence is more than a scintilla, i.e., it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We examine the record in the light most favorable to the non-movant, indulging every reasonable inference and resolving any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

12

**B.    Analysis**

Johnson argues that a genuine issue of material fact exists as to the width of Block 1 and the location of the portion of the Casterline Drive right-of-way abandoned in Ordinance 252. *See Betts v. Reed*, 165 S.W.3d 862, 870 (Tex. App.—Texarkana 2005, no pet.) ("Once a road is dedicated to public use, that road remains subject to that use unless it is abandoned." (quoting *Lindner v. Hill*, 673 S.W.2d 611 (Tex. App.—San Antonio 1984), *aff'd*, 691 S.W.2d 590 (Tex. 1985))).

"Ordinarily, intent to abandon an easement must be established by clear and satisfactory evidence, and abandonment of an easement will not result from nonuse alone; instead, the circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner." *R2 Restaurants, Inc. v. Mineola Cmty. Bank*, SSB, 561 S.W.3d 642, 654 (Tex. App.—Tyler 2018, pet. denied) (citing *Toal v. Smith*, 54 S.W.3d 431, 437 (Tex. App.—Waco 2001, pet. denied)); *see also Lambright v. Trahan*, 322 S.W.3d 424, 433 (Tex. App.—Texarkana 2010, pet. denied) (recognizing the universal rule that abandonment of an easement turns on the intent to abandon). "[W]e apply basic principles of contract construction and interpretation when considering [an] express easement's terms." *Id.* "We give the terms their plain and ordinary meaning when they are not expressly defined, and we read the terms of an easement as a whole to determine the parties' intentions and to carry out the purpose for which the easement was created." *Id.* Further, "[w]hen the construction of municipal ordinances is involved, as when statutory construction is involved, our primary duty is to carry out the intentions of the municipality's legislative body." *City of San Antonio v.*

13

*Headwaters Coal., Inc.*, 381 S.W.3d 543, 551 (Tex. App.—San Antonio 2012, pet. denied) (citations omitted).

We turn to the text of Ordinance 252, which reads in pertinent part:

WHEREAS, adequate access and right-of-way will still exist for all affected property;

. . . .

**Section 1.** That the portion of Casterline Drive being 0.275 acres of land or 12,000 square feet of land and being the Easterly thirty Feet (E. 30′) of Casterline Drive lying between Block 1 and the waterfront East of Block 1, Fulton Townsite, Aransas County, Texas with said Casterline Drive shown as a 60-feet wide [right-of-way] by the Plat of Record of Fulton Townsite in Volume "E", Pages 540[–]41, Deed Records of Aransas County, Texas . . . is not needed as public right-of-way and the Town Council finds and deems it necessary to close and abandon such portion of such Casterline Drive for public safety . . . subject to the retention of [a public utility easement] for the Town of Fulton . . . .

**Section 2.** That the portion of Casterline Drive being . . . the Easterly thirty Feet (E. 30′) of Casterline Drive lying between Block 1 and the waterfront East of Block 1 . . . is hereby closed and abandoned as a public right-of-way subject to the above described public utility easement.

Both parties agree that "the Plat of Record of Fulton Townsite" referenced in the ordinance is based on the 1888 plat of Fulton. Johnson argues that this leaves a factual dispute about the location of the abandoned right-of-way because the 1888 plat does not indicate the width of Block 1, and Brundrett admitted in this deposition that he did not measure Block 1 when surveying the right-of-way for the ordinance.

However, both parties and their experts agree that the town has relied on surveys measuring Block 1 as being 150 feet in width and has paved and platted Casterline Drive accordingly. It is clear that the portion of the right-of-way Fulton abandoned is defined by that measurement. Johnson cannot simultaneously reason that Fulton failed to properly plat the right-of-way in accordance with the 1906 survey, yet Fulton also intended to

14

abandon the "easterly thirty feet" of right-of-way based on that same survey. Moreover, Johnson does not dispute Fulton's assertion that the purpose of Ordinance 252 was to resolve the encroachment of his building on the right-of-way. We conclude that Fulton intended to abandon the unpaved half and retain the paved half of the Casterline Drive right-of-way, as demarcated in the preponderance of the surveys showing Block 1 as 150 feet in length. Because there is no issue of fact regarding the portion of the right-of-way that was abandoned, any fact issue regarding the width of Block 1 is not material and cannot preclude summary judgment. *See Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("[A] fact is 'material' only if it affects the outcome of the suit under the governing law." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986))).

We conclude no genuine issue as to a material fact exists as to whether Fulton's easement encompasses the portion of Casterline Drive at issue and whether Johnson has the right to block off access to it. Therefore, the trial court did not err in granting summary judgment on this basis. We overrule Johnson's second issue.

## IV.    ATTORNEY'S FEES

By his last issue, Johnson argues the trial court abused its discretion when it awarded attorney's fees to Fulton.

## A.    Standard of Review & Applicable Law

Texas generally follows the "American Rule" regarding attorney's fees, prohibiting fee awards unless they are specifically provided for by contract or statute. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009). Under the UDJA, the trial court may award "reasonable and necessary attorney's fees as are equitable and

15

just" in a declaratory judgment action. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. The decision to award attorney's fees under the UDJA is permissive, not mandatory, and within the sole discretion of the court. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998); *Justice Bail Bonds v. Samaniego*, 68 S.W.3d 811, 815 (Tex. App.—El Paso 2001, pet. denied). Thus, we review a trial court's decision to award attorney's fees in a declaratory judgment action for an abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Montemayor v. Ortiz*, 208 S.W.3d 627, 663 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (op. on reh'g).

"There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). It is an abuse of discretion, therefore, to award attorney's fees under the UDJA when the statute is relied upon solely as a vehicle to recover attorney's fees. *See MBM Fin. Corp.*, 292 S.W.3d at 669; *Strayhorn v. Raytheon E-Systems, Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied).

B.    **Analysis**

Johnson argues that the trial court abused its discretion when it awarded attorney's fees because Fulton relied on the UDJA solely as a vehicle to recover otherwise impermissible attorney's fees. *See MBM Fin. Corp.*, 292 S.W.3d at 669; *Strayhorn*, 101 S.W.3d at 572.

Fulton sought the following declarations in its amended petition: (1) Johnson's actions "constitute a nuisance," (2) "the closing and abandoning of the Easterly thirty

16

(30['']) feet of Casterline Drive in Ordinance No. 252" is void and (3) "that said Easterly thirty (30['']) feet is not abandoned and is a public right of way" because Johnson did not pay the $10 consideration to effectuate the abandoning.[5] Fulton admits in its appellate brief that it "decided not to pursue" the second request.

The only declaration in the trial court's permanent injunction was "that by virtue of the 1888 plat[,] the street in question is a public street." However, the declaration does not address Johnson's underlying claim—i.e., that Fulton has no easement in the portion of Casterline Drive at issue—and Johnson never denied that Casterline Drive is a public street. *Cf. Universal Printing Co.*, 73 S.W.3d at 296–97 (upholding attorney's fees under the UDJA because declaration that contested land was "dedicated to public use" to the city was significant to counteract appellant-homeowners' underlying adverse possession argument). Fulton obtained a permanent injunction that enjoins Johnson from blocking off access to the paved half of Casterline Drive. The ensuing declaration—that Casterline Drive is a public street—does not provide separate or distinct relief from the permanent injunction. *See City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 455 (Tex. App.—Dallas 2010, pet. denied) (reversing attorney's fees under the UDJA because appellee's "declaratory action had no greater ramifications than [its] cause of action for a compensable taking and merely duplicated the issues already before the trial court"); *cf. Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 442 (Tex. App.—Austin 2004, pet. denied) (upholding attorney's fees under the UDJA because "[i]f appellees had

---

[5] In its original petition, Fulton also sought declarations that: (1) Casterline Drive is a public street "whose citizens have the right to drive on without the barricades erected by Johnson," and (2) Johnson has no right to deny the public access to this street." However, Fulton's amended petition did not include these declarations.

prevailed on their request for injunctive relief but not the declaratory relief, the relief would not be the same," thus, the declaratory relief was not duplicative of the injunctive relief).

Fulton asserts in its appellate brief, without citing to authority, that this is a "text[]book case for a Declaratory Judgment." Fulton argues that it "sought and obtained a declaratory judgment of the rights, status and other legal relations in Casterline Dr[ive]." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) ("A person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder."). As stated above, the only declaratory relief in the permanent injunction was that the portion of Casterline Drive "in question is a public street." Fulton does not explain how this declaration provides separate relief from the injunctive relief it obtained. *See MBM Fin. Corp.*, 292 S.W.3d at 669; *Universal Printing Co.*, 73 S.W.3d at 296. Notably, when the trial court asked what damages Fulton sought during the summary judgment hearing on June 23, 2023, Fulton's counsel responded:

> Originally, I think I may have structured [the motion for summary judgment] with a declaratory judgment, that kind of thing, asking for attorney fees. But the bottom line is, as far as damages, we are not seeking any specific damages. All we want is a temporary injunction to be made a permanent injunction. That's all we are looking for.

We conclude the trial court abused its discretion when it awarded attorney's fees to Fulton because the declaratory relief adds "nothing to what would be implicit or express" in the trial court's permanent injunction and the record appears to illustrate that Fulton relied solely on the UDJA as a vehicle to recover attorney's fees. *See MBM Fin.*

18

*Corp.*, 292 S.W.3d at 669; *Universal Printing Co.*, 73 S.W.3d at 296. We sustain Johnson's third issue.

## V.     CONCLUSION

We reverse the portion of the trial court's judgment awarding $28,306 in attorney's fees to Fulton, and we render judgment that Fulton take nothing by way of its claim for attorney's fees. We affirm the judgment in all other respects.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
16th day of May, 2024.