**Opinion issued August 26, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-22-00821-CV

————————————

**LOUIS A. TSAKIRIS FAMILY PARTNERSHIP, LTD. AND ALEX TSAKIRIS FAMILY LIMITED PARTNERSHIP LTD., Appellants**

**V.**

**WALLER COUNTY ROAD IMPROVEMENT DISTRICT NO. 1, Appellee**

On Appeal from the 506th District Court
Waller County, Texas
Trial Court Case No. C-266

## OPINION

This appeal involves an eminent domain proceeding brought by Appellee Waller County Road Improvement District No. 1 against Appellants Louis A. Tsakiris Family Partnership, Ltd. and Alex Tsakiris Family Limited Partnership Ltd. to condemn and declare certain property owned by Appellants as a permanent

easement to be used for a paved extension of Kingsland Boulevard in Waller County, Texas. The District sued Appellants for statutory condemnation and pleaded for declarations that Appellants were not entitled to any compensation for the condemned easement because Appellants had dedicated the easement to the public and, alternatively, the easement existed by estoppel.

The trial court granted the District's motion for summary judgment on its claims for condemnation and declaratory relief and rendered a final judgment awarding the District "possession and ownership of the Kingsland Easement" and declaring that because the easement "exist[ed] as a public right of way by express dedication and by estoppel," Appellants were "entitled to no compensation for the District's condemnation of such easement."

In five issues, Appellants argue the trial court erred in granting summary judgment for the District because (1) the District lacked standing; (2) Waller County failed to comply with Chapter 281 of the Texas Transportation Code; (3) with respect to the District's easement by estoppel claim, the District failed to prove that Appellants made any representations to the District and, even if such representations were made, there is a question of material fact on the element of reliance; (4) with respect to the District's express dedication claim, the District failed to prove that Waller County accepted an offer to dedicate the specific easement the trial court condemned, and the alleged offer was conditional upon events that were never met,

2

and (5) there are questions of material fact regarding the boundaries of the proposed "realigned" easement, and the District is not entitled to summary judgment as a matter of law because the easement awarded to Appellee in the final judgment, which the trial court found was a public roadway based on express dedication and estoppel, is not supported by any evidence.

We reverse the trial court's judgment and remand for further proceedings.

## Background

Kingsland Boulevard is a four-lane boulevard located inside the boundaries of Waller County Road Improvement District No. 1. The question the trial court considered on summary judgment was whether at some in point in 2009 or after, Appellants or their predecessors in interest created an easement by express dedication or estoppel allowing the District to condemn the easement to construct a paved extension of Kingsland Boulevard without compensation to Appellants.

The Waller County Road Improvement District No. 1 is a special district created by the Texas Legislature "to serve a public use and benefit." TEX. SPEC. DIST. CODE § 3832.004(a). It is a governmental agency authorized to exercise a broad array of powers in connection with the development, improvement, and management of public roads in Waller County, Texas. *See id.* § 3832.003(b).

Appellants Louis A. Tsakiris Family Partnership, Ltd. and Alex Tsakiris Family Limited Partnership Ltd. ("Tsakiris Partnerships") are limited partnerships,

3

owned by Louis A. Tsakiris and his brother, Alex Tsakiris, respectively. In addition to the Louis A. Tsakiris Family Partnership, Ltd., Louis also owns or controls other business entities including Igloo Partners #11, LP, Waller XYZ, LP, Blimp Base Project LP, Katy I-10 Prairie Partners, LP, and Hyas Corporation. At one time, Louis and his brother Alex, through their various business entities, owned all of the property inside the District's boundaries.

Michael Magness is the owner and principal of ML Dev, LP ("ML Dev"), a limited partnership that develops infrastructure for residential and commercial developments, such as roads, sewer and water facilities, and detention ponds. Louis worked with Magness and ML Dev to develop and sell property within the District. Sometimes, Louis' entities would sell property to ML Dev first, and then ML Dev would sell the property to a third party. Louis would help negotiate the sale of these properties by ML Dev to the third party.

## A.    The Road Alignment and Construction Agreement

In 2004, Waller County, Texas and various entities[1] ("Original Developers") entered into a Road Alignment and Construction Agreement ("Road Agreement") for the construction of Kingsland Boulevard and Igloo Road (now known as Jordan Ranch Boulevard) in Waller County, Texas. Pursuant to the Road Agreement, the

---

[1]    The entities were Dixie Farm Partners, LLP, Beamer Road Partners, LLP, and Blimp Base Partners, LLP.

4

Original Developers agreed to pay for the initial cost of constructing two lanes of the roads, and Waller County agreed to install any future lanes "as traffic warrants" at its cost.

Over the following years, the parties amended the Road Agreement several times, each time executing a new modification.

**B.     The Road Agreement Modifications**

In 2007, Waller County, the Original Developers, and Blimp Base Project, LP ("Blimp Base"), Katy I-10 Prairie Partners, LP ("Katy I-10"), ML Dev, Waller XYZ, LP ("Waller XYZ") and Hyas Corporation ("Hyas") (collectively with the Original Developers, the "Developers") executed a Modification of the Road Agreement. As modified, the agreement obligated the Developers to extend Igloo Road and Kingsland Boulevard and to fund the cost of the extensions. In exchange, Waller County agreed to pay Hyas $3,300,000.00 in yearly installments beginning in March 2009, representing half the cost of the extensions.

On October 5, 2009, Waller County and the Developers executed a Second Modification of the Road Agreement ("Second Modification"), which among other things, replaced Paragraph 2.1 of the Road Agreement to read:

> Dedication of Right of Way. To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right of way necessary for the construction and maintenance of the Road Improvements. Such dedication shall be completed within sixty days of the signing of this Second Modification of Road Alignment and Construction.

Also on October 5, 2009, Waller XYZ and Blimp Base executed a 100' road easement for the extension of Igloo Road and Kingsland Boulevard to the east of Igloo Road. At the time, Waller XYZ owned the land comprising the easement. Waller XYZ transferred its ownership to the Tsakiris Partnerships in 2018.

According to the Tsakiris Partnerships, Waller XYZ and Blimp Base did not in 2009 execute an easement for the extension of Kingsland Boulevard to the west of Igloo Road, which the parties refer to as the Kingsland Extension, because "there was no development in that area at that time" and "agreeing to an easement location for the Kingsland Extension would have [thus] been premature." The Tsakiris Partnerships submitted as evidence in the trial court a "District Landscape Maintenance Map" dated May 21, 2009, which they explain is a map of the District prepared by Pate Engineers—the District's engineer at the time.[2] The Tsakiris Partnerships explain that as reflected in the map, "there was little to no development in the District or surrounding area at the time."

At an October 5, 2009 Meeting of the Waller County Commissioners Court, a majority of the Commissioners voted to approve certain actions taken with regard to the Second Modification, as reflected in the meeting minutes, which state:

> Discuss and take action to approve 2nd Modification of Road Alignment and Construction Agreement for Igloo Road and Kingsland Boulevard.

---

[2]     The Pate Engineer District Landscape Maintenance Map was attached as Exhibit A-5 to Appellants' Response in Opposition to the District's Motion for Summary Judgment.

> To modify Section 2.1 to read: Dedication of Right-of-Way: To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right-of-way necessary for the construction and maintenance of the Road Improvements such dedication, of 100 feet right-of-way for both Igloo and Kingsland, shall be completed within 60 days of the signing of this 2nd Modified Agreement. Said dedication will include a metes and bounds description.

The meeting minutes further state: "Discuss and take action to accept right-of-way easements for portions of Igloo Road and Kingsland Boulevard."

In September 2012, Waller County and the Developers executed a Third Modification of the Road Agreement in which they agreed to realign Igloo Road, release the October 5, 2009 100' road easement, and execute a new 100' road easement in its place.[3] Waller XYZ and Blimp Base also granted Waller County a non-exclusive easement over a 50' strip of land bordering the western half of the proposed Igloo Road south of Kingsland Boulevard for the construction of the eastern half of Igloo Road. The release of the October 5, 2009 100' road easement, the September 17, 2012 100' road easement, and the 50' easement were recorded in Waller County's real property records.

In 2014, Waller County and the Developers executed a Fourth Modification of the Road Agreement in which they agreed to realign Igloo Road south of the proposed Kingsland Boulevard, release the September 17, 2012 100' road easement,

---

[3] The new 100' road easement is attached as Exhibit 3 to the Third Modification of the Road Agreement.

7

and execute a new easement reflecting the new alignment for Igloo Road. The Developers also granted Waller County a non-exclusive easement for the construction of Igloo Road that included a metes and bounds description. Attached as Exhibit 1 to the Fourth Modification is a "General Plan for Igloo Road & I-10" depicting "the alignment for Igloo Road, south of the proposed Kingsland Boulevard" ("General Plan for Igloo Road"). And Exhibit 3 is a survey prepared by the District's surveying company—Windrose Land Services, Inc.—dated July 12, 2012 ("Windrose Survey"), depicting the "non-exclusive easement for the construction of Igloo Road" granted by the developers to Waller County.[4]

The Windrose Survey is titled, "Exhibit of Ownership and Easements for Waller County Improvements District No. 1 Waller County, Texas" and among other things, it contains an "Easement Table" listing 91 easements by description and recording document. According to the Tsakiris Partnerships, the Windrose Survey is evidence that by 2012, "the District had full knowledge of the ownership of all land and easements affecting the land within its boundaries." They argue that the Windrose Survey clearly "show[s] that the 100' Road Easement signed on October 5, 20[0]9 was related to the extension of Igloo Road and Kingsland

---

[4]    The Fourth Modification provides, "Developers hereby grant [Waller County] a non-exclusive easement for the construction of Igloo Road. Said easement is depicted on (Exhibit 3)." And it provides that the parties "agree that the alignment for Igloo Road, south of the proposed Kingsland Boulevard shall be as depicted on the General Plan for Igloo Road & I-10, (Exhibit 1)."

8

Boulevard east of Igloo road, [and] not the Kingsland Extension" west of Igloo Road. They further argue that no easement for the Kingsland Extension is reflected in the table of easements on the Windrose Survey, further establishing that the Tsakiris Partnerships had not granted an easement for the proposed Kingsland Extension. They contend that the "survey shows the owners of the land wherein the proposed Kingsland Extension would run as Igloo Partners #11, LP, Waller XYZ, and Katy 1-10 unencumbered by any easements."

Sometime in 2020, Waller County stopped paying Hyas under the Road Agreement. On October 7, 2020, the Developers terminated the Road Agreement due to Waller County's alleged failure to comply with its payment obligations under the agreement.

## C.    ML Dev's Master Sales Agreement

In 2008, ML Dev and the District executed a Master Sales Agreement and Lease of Facilities ("ML Dev MSA"), under which ML Dev agreed to construct roads, water supply facilities, waste disposal facilities, and drainage facilities within the District's boundaries and to sell or lease the facilities to the District. The District in turn agreed to obtain bonds to pay for the facilities and roads once the District accrued enough taxable value to issue the bonds.

In 2010, ML Dev and the District amended the ML Dev MSA to, according to Magness, introduce a revenue-sharing mechanism whereby ML Dev and another

9

developer would be entitled to bonds supported by 30% of the taxable value of any third-party developer's property. The amendment defined the projects that would be subject to the ML Dev MSA to include "ROADS/ROWS" and "LAND & EASEMENTS DEDICATED FOR PROJECTS" and it further stated that the District would be responsible for reimbursing 100% of ML Dev's reimbursable costs for these defined projects. The District and ML Dev later executed a second amendment to the ML Dev MSA to include a provision whereby a portion of the taxable assessed valuation of future development projects would be used to issue bonds to reimburse ML Dev.

## D. The BGM Land Investments, Ltd Tract

In 2018, Igloo Partners #11, LP ("Igloo Partners") sold to BGM Land Investments, Ltd. ("BGM") 107 acres of undeveloped property west of Igloo Road and south of the Kingsland Extension ("BGM Tract").[5]

In conjunction with that sale, Louis responded to questions proposed by BGM regarding the portion of the Kingsland Extension bordering the BGM Tract. On September 11, 2018, BGM's consulting engineer, Justin Wagner ("Wagner"), sent an email to John Wallace ("Wallace"), the District's general counsel, with a letter

---

[5] Igloo Partners and BGM executed a "Commercial Contract - Unimproved Property" agreement in July 2018, which they later amended to substitute Igloo Partners, Waller XYZ, and Katy I-10 as the sellers.

attached requesting information regarding the proposed BGM sale. Louis was copied on the letter. In the letter, Wagner stated:

Kingsland Boulevard Items Needing Confirmation and/or Request:

1) Will the appropriate land owner's (sic) confirm the alignment of Kingsland Boulevard is set based on information provided to purchaser? Also, will the appropriate land owner's (sic) grant and convey necessary easements and/or ROW needed for design and construction.

Wallace forwarded Wagner's email and letter to Magness, owner of ML Dev.

On September 12, 2018, Louis emailed his response to Wagner's letter to Andrew Loessin and Ryan Getz with Ward, Getz & Associates, LLP ("WGA")— the District's engineer. In his response to Wagner's request for information regarding Kingsland Boulevard, Louis stated:

The ROW for Kingsland Boulevard has been dedicated to Waller County. The Seller has confirmed that the Seller will not attempt to re-align Kingsland through any of the property BGM Land Investments has under contract. There may be a re-alignment west of the subject 140 acre tract. The land owner has indicated that he does not believe any easements or ROW are necessary, but will provide them if they are in fact necessary.

Magness emailed Louis' response to Wallace with the District.

According to the Tsakiris Partnerships, at that time, "Louis mistakenly believed that the right-of-way had been dedicated to the County," but that regardless, "the owners intended to provide the requested easements for the right-of-way." But, the Tsakiris Partnerships argue, neither Katy 1-10, Waller XYZ, nor Igloo Partners

11

"intended to give away their property for free." And "had the County complied with the Road Agreement," the Tsakiris Partnerships "would have transferred the easements to the County as required under that agreement."

**E.   The Ross Agreement**

In 2018, ML Dev and P150, LLC ("P150"), an entity affiliated with Ross Dress for Less, Inc. ("Ross"), executed an Agreement of Purchase and Sale of Real Property ("Ross PSA") under which ML Dev agreed to sell to P150 250 acres of undeveloped land just south of I-10 and west of Igloo Road/Jordan Ranch Boulevard ("Ross Tract"). Section 8.5 of the Ross PSA obligated ML Dev to (a) "[e]xtend Kingsland Blvd from [Igloo Road/]Jordan Ranch Road to Woods Road"—the Kingsland Extension—at its own expense and (b) to "[r]ealign Kingsland Boulevard to a position north of its present location, subject to the approval of Waller, County, Seller and Purchaser."[6] Attached to the Ross PSA at Exhibit A is a diagram of the Ross Tract that, according to the District, shows "Kingsland Boulevard realigned." The Ross PSA states

> Attached hereto as Exhibit "A" is a plan of the Developable Property showing the intersection of Kingsland Boulevard and Woods Road, with Kingsland Boulevard realigned, but subject to governmental approval. Seller has approved such realignment, and Purchaser understands that such realignment is subject to governmental approval.

---

[6]   Section 8.5 further states that "condition (b) shall not be binding upon Seller unless Buyer: (i) notifies Seller in writing on or before October 1, 2018 [and] (ii) deposits an additional Five Hundred Thousand Dollars ($500,000.00) with Seller on or prior to December 10, 2018."

According to Magness, ML Dev intended to purchase the land necessary for the Kingsland Extension from the Tsakiris Partnerships, which the Tsakiris Partnerships had agreed to provide, and ML Dev would have been entitled to reimbursement from the District for the cost of the land it purchased from the Tsakiris Partnerships and construction of the Kingsland Extension.

On October 17, 2018, Magness with ML Dev emailed Wallace with the District that ML Dev's sale to P150 was "getting to the point where the Buyer [P150] will need to have a reimbursement agreement," and on October 21, 2018, Magness provided Wallace with contact information for P150's legal counsel. P150 and the District began negotiating a development financing agreement pursuant to which the District would reimburse P150 for its costs incurred in building water and sewer infrastructure within the District. On April 22, 2019, the District and Ross executed a Development Financing Agreement ("Ross DFA").[7] Under the Ross DFA, the District agreed to construct the Kingsland Extension at its sole cost.[8]

---

[7]   In June 2019, ML Dev sued the District claiming it "violat[ed] the [ML Dev] MSA by contracting with Ross to use 100% of the taxable value from Ross' development to reimburse Ross when the District had agreed in the MSA to use 30% of that value to reimburse ML Dev."

[8]   Section 28 of the Ross DFA provides that "[a]s additional consideration for this Agreement, and to provide paved access to Tract A, the District agreed to construct a 4-lane divided roadway [for] the portion of Kingsland Boulevard between [Igloo Road/]Jordan Ranch Boulevard and Woods Road . . . .The costs of the Kingsland Improvements shall be borne solely by the District and shall in no way be counted against any reimbursement due to Developer hereunder."

13

During negotiations of the Ross DFA, Wallace sent Magness an email dated November 12, 2018 asking who would be providing the land (right-of-way) for the Kingsland Extension and Magness responded, "We have dedicated the road easements to the County."

In early 2019, the District hired WGA to prepare a formal survey and plat of the realigned Kingsland Extension. On March 4, 2019, Getz sent an email to Magness asking, "[W]hen did you grant the easement to Waller County [for the Kingsland Extension]" and Magness replied, "About ten yrs. two amendments I think. I know in morning."

On March 5, 2019, Louis sent an email providing Magness a synopsis of the Roadway Agreement and modifications, stating that under the Second Modification, the "Developer agreed to dedicated ROW." The same day, Magness forwarded Louis' email to Getz attaching copies of the Roadway Agreement and all four modifications. On March 22, 2019, Magness emailed Getz with a copy to Louis, stating

> Before we get into the platting of Kingsland, we need to make sure of a couple items.
>
> Contractually ML Dev is not building Kingsland.
>
> ML Dev has agreed with P150 to relocate the road after closing.
>
> There is a metes and bounds description of the existing easement. There will need to be a new easement and metes and bounds of the new Kingsland alignment. The county will need to abandon old easement

14

and accept new. I would think this needs to be done before platting. And all is post closing.

On May 8, 2019, ML Dev and P150 executed a Third Amendment to the Ross PSA ("Third Amended Ross PSA") in which they agreed to remove the obligation of ML Dev under Section 8.5 to build the Kingsland Extension or realign Kingsland Boulevard. P150 subsequently assigned all its interest and obligations as the purchaser under the Third Amended Ross PSA to Ross, and Ross and ML Dev closed on the purchase of the Ross Tract in May 2019.

In August 2019, Getz with WGA informed Magness that Ross needed an easement from ML Dev over land adjacent to its detention area to properly access that area. According to the Tsakiris Partnerships, ML Dev granted the requested "drainage easement" where "Ross released ML Dev from any existing or future obligation to provide them with any other easements or right-of- ways."

According to the District, the Tsakiris Partnerships' representations that an easement existed over Kingsland Boulevard continued. The District points to an email dated October 3, 2019 from Louis where he represented to WGA that "there is an existing easement for Kingsland Boulevard, metes and bounds or diagram." On February 21, 2020, WGA emailed Louis, attaching a final plat of the realigned Kingsland Boulevard, asking who would sign the plat for the Tsakiris Partnerships. Magness replied, with a copy to Louis, stating, "The owners will sign as landowners only."

15

In June and July 2020, WGA sent Louis a final plat of right of way for the Kingsland Extension to be executed by the Tsakiris Partnerships. WGA informed Louis that Waller County had approved the final plat, but the Tsakiris Partnerships declined to sign the plat.

## F.     Condemnation Proceeding

In October 2020, the Board of Directors for the District held a special meeting at which it authorized "[p]roceedings in [e]minent [d]omain to acquire easement or rights-of-way" over the "Kingsland Boulevard street dedication."

In February 2021, the District filed its Original Petition in Condemnation in the County Court of Law of Waller County against the Tsakiris Partnerships "seeking condemnation of fee simple title to approximately 15 acres for access, construction, maintenance, and use of Kingsland Boulevard as a public right of way"—the Kingsland Extension. Special Commissioners were appointed to hear the condemnation action. On March 24, 2021, the Special Commissioners awarded the Tsakiris Partnerships $1,333,020.00 in damages for the District's "condemnation of the fee simple title to" the Kingsland Extension. The District deposited the award into the registry of the court and requested issuance of a writ of possession to the condemned property, which the court granted.

16

The Tsakiris Partnerships objected to the award and requested a trial *de novo*. On motion of the District, the County Court at Law transferred the District's condemnation case to District Court in June 2021.

In its First Amended Original Petition, filed in the District Court on September 20, 2021, the District sought "(1) to condemn only an easement for Kingsland Boulevard (not fee simple title) and (2) declarations that the easement existed by estoppel and express dedication, and therefore, the Tsakiris Partnerships were not entitled to compensation for the easement."

On July 29, 2022, the District filed its Third Amended Petition, the live pleading when the District Court signed its Final Judgment on October 25, 2022, the subject of this appeal. In its Third Amended Petition, the District asserted claims for (1) statutory condemnation, and (2) declaratory judgment. The District sought to acquire, through its eminent domain authority, a judgment of condemnation granting to the District a permanent easement and right-of-way over Kingsland Boulevard for purposes of construction, installation, operation and maintenance of the Kingsland Extension.

The District also sought declarations that the Tsakiris Partnerships were entitled to no compensation because (1) the Tsakiris Partnerships had dedicated the easement for the Kingsland Extension to public use by express dedication, (2) the Tsakiris Partnerships had dedicated the easement for the Kingsland Extension to

public use by implied dedication, and (3) the easement for the Kingsland Extension existed by estoppel and thus, although the Tsakiris Partnerships "hold legal title to the Property, they did not acquire and do not hold equitable ownership of the Easement." According to the District:

> Express and/or implied dedication occurred because: the words (written and/or oral), conduct, acts, and/or omissions of prior owners expressly and/or implicitly indicated that such owners intended, offered and agreed to dedicate the road to public use, they were competent to do so, the District and third parties relied on such acts and they and the public will benefit from the dedication, and there was an offer and acceptance of the dedication. The Easement was created by estoppel because: prior owners and the Defendants made representations that the Easement would be or had been dedicated to the public, and such representations were believed and acted upon by the District, Waller County, and the public. After the Easement was created, in December 2018, prior owners transferred the Property to Defendants at no charge. Therefore, the Easement existed before Defendants acquired the Property and Defendants' subsequent conduct further effected an easement by estoppel. Consequently, Defendants are entitled to no compensation for condemnation of the Easement by the District.[9]

## G. Summary Judgment

In September 2022, the District moved for summary judgment on its claims for statutory condemnation and declaratory judgment based on express dedication and easement by estoppel.[10] In its motion, the District argued that it conclusively

---

[9] The District alleged that "the Easement was created under the doctrine of easement by estoppel because: (1) Defendants and/or their agents represented to the District the Easement had been dedicated and further easement would be provided if necessary for realignment; (2) the District believed the representation; and (3) the District relied upon the representation."

[10] The District did not move for summary judgment on its claim of implied dedication.

had established that Louis and Magness, on behalf of the Tsakiris Partnerships' predecessors in interest—the Developers—had created an easement over the Kingsland Extension—the Kingsland Easement—by express dedication and by estoppel. According to the District, "the indisputable evidence show[ed] the original Kingsland Easement was expressly dedicated to the County in 2009, years before the Tsakiris Partnerships acquired bare legal title" and "in September 2018, [Louis] and Magness represented that the original Kingsland Easement had been dedicated to the County and the landowner would provide the easement needed to realign Kingsland Boulevard." The District argued that as a result, when "[Louis] and Magness transferred bare legal title to the Tsakiris Partnerships in December 2018, they could reserve no rights incompatible with the Kingsland Easement already created by express dedication and by estoppel." The District also argued that the evidence conclusively established its claim for easement by estoppel because "after the Tsakiris Partnerships acquired bare legal title," "[Louis] and Magness acted for [the Tsakiris Partnerships in] sell[ing] the [Ross Tract] to Ross," and "Tsakiris and Magness continued to represent to the District that the 'new easement' would be substituted for the 'old easement' to realign the western end of Kingsland Boulevard [to] avoid encroachment upon the Ross Tract."

The District asked the trial court to grant their summary judgment motion and declare that:

(1)     The Kingsland Easement is accurately described on the plat that is [District's] Exhibit 32 (Px32) in the Appendix to this Motion;

(2)     The Kingsland Easement exists by express dedication and by estoppel; and,

(3)     Therefore, the District is entitled to condemnation of the Kingsland Easement at no cost and Defendants are entitled to no compensation for such condemnation.

The Tsakiris Partnerships argued that the District was not entitled to summary judgment because the Tsakiris Partnerships' predecessors in interest had not dedicated the Kingsland Extension to Waller County in 2009. They argued that the Developers had agreed only to dedicate the right of way necessary for the construction and maintenance of the road improvement defined in the Road Agreement "[t]o the extent necessary and appropriate," and in October 2009, neither the Developers nor Waller County believed it was "necessary and appropriate" to execute an easement for the proposed Kingsland Extension, because there was no development in that area at the time. They argued that to the extent any such dedication to Waller County had been created in 2009, it was unenforceable because Waller County had not accepted any such easement, and Waller County had not complied with Section 281 of the Texas Transportation Code, which they argued was applicable. The Tsakiris Partnerships also argued that the Kingsland Extension over which the District sought condemnation was located on property different than the extension proposed in 2009. The District further contended that the District had

20

not established the elements of its easement by estoppel claim as a matter of law because the representations on which the District relied had not been made to the District and the District could not have relied on Magness' and Louis' statements that the easement for the Kingsland Extension had been dedicated to Waller County because the District knew that no such easement had been granted.[11]

The trial court granted the District's motion for summary judgment on its statutory condemnation and declaratory judgment claims and entered a Final Judgment awarding the District possession and ownership of the Kingsland Easement and declaring that the "Kingsland Easement exists as a public right of way by express dedication and by estoppel" and thus the Tsakiris Partnerships "are entitled to no compensation for the District's condemnation of such easement." The Final Judgment states that the Kingsland Easement "is accurately described on the plat attached hereto as Exhibit 1, which is part of Plaintiff's Exhibit 32 in the Appendix to [the District's] Motion for Summary Judgment."

_____

[11] The District attached to its motion for summary judgment, among other things, the October 5, 2009 minutes from the Waller County Commissioners meeting, the Road Agreement and Modifications, emails among Appellants, the County, and the District, excerpts from the depositions of Louis and Magness, and declarations from John Wallace, Ryan Getz, Douglas Postle, and Jeffery Parsons.

Appellants attached to their response Louis' declaration, the Road Agreement and Modifications, the October 5, 2009 100' Road Easement, the May 21, 2009 Pate Engineers District Map, a 2012 release of easement and grants of new easements, the July 10, 2012 Windrose Survey of District Ownership and Easements, the BGM contract and amendment, emails from Michael Boyd to Louis, two letters to Judge Duhon, Magness' declaration, and the ML Dev MSA and amendments.

This appeal followed.

## Summary Judgment

We review a trial court's order granting summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). The movant on a traditional motion for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. If the movant satisfies its initial burden on the issues expressly presented in the motion, the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See Lujan*, 555 S.W.3d at 84.

To decide whether issues of material fact preclude summary judgment, evidence favorable to the non-moving party must be taken as true, every reasonable inference must be indulged in its favor, and any doubts resolved in its favor. *Id.*; *see also Sandberg v. STMicroelectronics, Inc.*, 600 S.W.3d 511, 521 (Tex. App.—Dallas 2020, pet. denied). The movant must conclusively establish its right to judgment as a matter of law. *See id.* A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005); *see also Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012) ("Undisputed evidence may be conclusive of the absence of a

material fact issue, but only if reasonable people could not differ in their conclusions as to that evidence.").

When, as here, a trial court grants a motion for summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the grounds advanced in the motion are meritorious. *Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017); *see also McCoy v. Rogers*, 240 S.W.3d 267, 271 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (stating if order does not identify ground on which the trial court relied in granting summary judgment, appellant must negate all grounds for summary judgment on appeal).

A plaintiff moving for summary judgment is not under any obligation to negate affirmative defenses. *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.). An affirmative defense prevents the granting of a summary judgment for the plaintiff on its own claim if each element of the affirmative defense is supported by summary judgment evidence. *Id.* A party raising an affirmative defense in opposition to a summary judgment motion must either (1) present a disputed fact issue on the opposing party's failure to satisfy its own summary judgment burden of proof, or (2) establish the existence of a fact issue on each element of the affirmative defense. *Id.*

23

## Standing

The Tsakiris Partnerships argue in their first issue that the District lacks standing to pursue its claims for express dedication and easement by estoppel because any purported public dedication of the Kingsland Easement was made to Waller County, not the District. They argue that as a result, only Waller County has standing to enforce the purported easement, and the District cannot obtain a judgment for claims belonging to Waller County—a governmental entity distinct from the District that was not a party to the condemnation proceedings.

The District responds it has standing to enforce the public dedication of the Kingsland Easement pursuant to the Texas Transportation Code and Local Government Code. It argues both statutes grant the District the power to acquire property for the construction of roads and thus standing to sue in connection with those powers, including the ability to obtain declarations under the Texas Declaratory Judgment Act connected to the exercise of its eminent domain power.

### A.   Standard of Review

A plaintiff must have both standing and capacity to bring suit. *Pike v. Tex. EMC Mgmt. LLC*, 610 S.W.3d 763, 775 (Tex. 2020); *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Standing addresses whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome, whereas capacity is a procedural issue addressing the personal

qualifications of a party to litigate. *Austin Nursing Ctr.*, 171 S.W.3d at 848 (internal quotations omitted). "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Pike*, 610 S.W.3d at 775 (quoting *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996) (emphasis in original)).

## B.    Analysis

In its Third Amended Petition, the District asserted a claim for statutory condemnation of the Kingsland Extension, and it separately requested declarations that the Tsakiris Partnerships were entitled to no compensation for the condemned property based on express dedication and easement by estoppel. The Tsakiris Partnerships argue that the District lacks standing because the District's claims for express dedication and estoppel do not belong to it—they belong to Waller County.

The District is a governmental agency authorized to exercise a broad array of powers in connection with the development, improvement, and management of public roads in Waller County, including the authority to acquire property for a road facility and to construct permanent improvements, and institute and prosecute suits as needed to further its purposes.[12] Whether the District can assert a claim on behalf

---

[12]    *See* TEX. LOC. GOV'T CODE § 382.004(a) (authorizing counties to create public improvement districts); *id.* § 375.092(f) ("A district may acquire, construct,

25

of Waller County in furtherance of the District's authority to acquire and construct road facilities presents an issue of capacity, not standing. *See generally Pike*, 610 S.W.3d at 779 (holding "whether a claim brought by a partner actually belongs to the partnership is likewise a matter of capacity because it is a challenge to the partner's legal authority to bring the suit"); *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979) ("A public dedication is enforceable by the public authorities of the state, county or municipality involved.").

Unlike standing, capacity is not a jurisdictional prerequisite to suit but rather a procedural defense that must be raised by verified pleading in the trial court. *Austin Nursing Ctr.*, 171 S.W.3d at 849. Because the Tsakiris Partnerships did not challenge the District's capacity in the trial court, they cannot raise it for the first time on appeal. *See id.* (stating challenge to party's capacity must be raised by verified pleading in trial court and cannot be raised for first time on appeal).

To the extent the Tsakiris Partnerships argue that the District cannot enforce the Second Modification—the written document purportedly accomplishing the

---

complete, develop, own, operate, and maintain permanent improvements and provide services that directly benefit property in the district, regardless of whether the improvements or services are located inside or outside its boundaries."); *id.* § 375.092(c) ("A district may sue and be sued in courts of competent jurisdiction. . ."); TEX. TRANSP. CODE § 441.101(a)(1) (stating district may "acquire a road facility, acquire property for a road facility, and construct or improve a road facility, inside or outside district boundaries"); *id.* § 441.101(a)(6) (stating district may "exercise other powers and duties to accomplish the purposes for which the district was created").

dedication—because they are not a party to the modification, that also presents an issue of capacity, not standing. *See Pike*, 610 S.W.3d at 779 n.19 ("Texas law is clear, and this court has previously held numerous times, that a challenge to a party's privity of contract is a challenge to capacity, not standing. Whether a party is entitled to sue on a contract is not truly a standing issue because it does not affect the jurisdiction of the court; it is, instead, a decision on the merits.") (quoting *Highland Credit Opportunities CDO, L.P. v. UBS AG*, 451 S.W.3d 508, 516 (Tex. App.—Dallas 2014, no pet.)).

The Tsakiris Partnerships also argue that Louis' and Magness' purported representations about the existence of an easement for the Kingsland Extension and promises to provide further easements should realignment be necessary were made to Waller County and not the District, and therefore the District lacks standing to assert a claim for easement by estoppel on its own behalf. This too presents an issue of capacity, not standing, because it challenges the merits of the District's estoppel claim as opposed to whether the District has a "justiciable interest" in the existence of an easement created by estoppel. *See Austin Nursing Ctr.*, 171 S.W.3d at 848 ("The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in its outcome, whereas the issue of capacity is conceived of as a procedural issue dealing with the personal qualifications of a party to litigate.") (internal quotations omitted); *see also Tex.*

27

*Lottery Comm'n v. Scientific Games Int'l, Inc.*, 99 S.W.3d 376, 380 (Tex. App.—Austin 2003, pet. denied) (stating, to show standing, person must show justiciable interest in form of "an actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally").[13]

Relying on *Sabine & E. T. R. Co. v. Gulf & I. R. Co.*, 46 S.W. 784 (Tex. 1898), *Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 754 (Tex. App.—Fort Worth 2012, pet. denied), and *Allen v. Texas Children's Health Plan*, 649 S.W.3d 830, 833 (Tex. App.—Houston [1st Dist.] 2022, no pet.), the Tsakiris Partnerships argue the District lacks standing to bring claims for express dedication and easement by estoppel because any purported dedication in 2009 was made to Waller County, not the District, and the Tsakiris Partnerships did not make any representations to the District.[14]  Citing to *Sabine*, the Tsakiris Partnerships argue the District cannot

---

[13]  Even if the Tsakiris Partnerships were challenging the District's standing, they would not prevail because the District has a "justiciable interest" in the existence of an easement created by dedication or estoppel.  Resolution of either issue in the affirmative will determine whether the Tsakiris Partnerships have a compensable interest in the condemned Kingsland Easement.  The District's threatened injury is thus fairly traceable to the purported express easement or easement by estoppel, and the threatened injury is likely to be redressed by the District's claims which will determine whether the Tsakiris Partnerships have a compensable interest in the condemned Kingsland Easement. *See Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 155 (Tex. 2012) (stating standing requires plaintiff to have concrete and particularized injury that is actual or imminent and not hypothetical, be fairly traceable to defendant's conduct, and likely to be redressed by requested relief).

[14]  The Tsakiris Partnerships also argue that the District's motion for summary judgment "failed to state the 'specific grounds' for awarding condemnation of the purported easement—without any compensation" and thus the District was not

28

enforce a dedication made to Waller County because "a dedication of property to one entity for a public purpose does not equate to a dedication to a different entity or for a different public purpose." *See Sabine*, 46 S.W. at 786 (stating "[s]ince the [road, right of way, and land acquired for yard purposes by one railroad company] is already devoted to public use . . ., it is not to the interest of the public to destroy that use for the convenience or interest of another [railroad company] and to establish simply another public use"). The Tsakiris Partnerships' reliance on *Sabine* is misplaced because *Sabine* does not address whether one governmental entity can enforce a dedication of property for a public purpose made to another governmental entity, and, unlike in *Sabine*, the District condemned the Kingsland Easement for the same purpose the District asserts the easement was previously dedicated to the public—to be used as a public roadway.

The Tsakiris Partnerships' reliance on *Maddox* and *Allen* is likewise misplaced. In *Maddox*, Maddox and other landowners sued Vantage Energy for breach of contract and promissory estoppel seeking to compel Vantage to offer them oil and gas leases. 361 S.W.3d at 754–56. The landowners, who did not dispute that Vantage had made no promises to them, argued that Vantage was obligated to offer

entitled to summary judgment on this basis. Although included in its first issue challenging the District's standing, this argument, which was not raised in the trial court, does not present a question of standing. Furthermore, the District moved for summary judgment on its claims for express dedication and estoppel and the trial court granted summary judgment on both claims.

29

leases to the landowners under the theory of promissory estoppel based on promises Vantage allegedly had made to the Southwest Fort Worth Alliance. *Id.* at 761. The court held the landowners lacked standing to assert a claim for promissory estoppel because the summary judgment evidence conclusively established that Vantage had made no promises to the landowners and thus the landowners were "not 'promisees' who [could] assert the independent claim of promissory estoppel against Vantage." *Id.* The court also rejected the landowners' argument that they were third-party beneficiaries of a contract between Vantage and the SFWA. *See id.* at 759. *Maddox* is also inapplicable because the District is not asserting that it is a third-party beneficiary to a contract, and, as later discussed, the evidence reflects that, unlike in *Maddox*, the Tsakiris Partnerships made representations about the existence of an easement and promises to grant further easements directly to the District in 2018 and 2019.

In *Allen*, the court held the plaintiffs had not overcome the presumption against third-party beneficiary status, and they therefore lacked standing to sue for breach of the contract. 649 S.W.3d at 836, 841 (stating "third-party beneficiary status implicates standing and jurisdiction"). *Allen* is inapposite because the District did not assert third-party beneficiary status to pursue its claims.

We overrule the Tsakiris Partnerships' first issue.

**Chapter 281 of the Texas Transportation Code**

In their second issue, the Tsakiris Partnerships argue the trial court erred in granting summary judgment on the District's express dedication and easement by estoppel claims because if the Kingsland Extension was dedicated to Waller County in October 2009, as the District asserts, Waller County was required to comply with Chapter 281 of the Texas Transportation Code to secure the dedication. Because Waller County allegedly did not comply with Chapter 281 when the purported dedication was made in 2009, the Tsakiris Partnerships argue the District's claim for express dedication is precluded. They also argue that Chapter 281 prohibits an easement by estoppel.

The District responds that Chapter 281 applies only to an acquisition of a "private road" by a "county." Because the District is not a county and there is no evidence that the Kingsland Extension was a "private road" in 2009, it argues Chapter 281 is not applicable.

**A.       Standard of Review and Applicable Law**

Chapter 281 of the Texas Transportation Code governs how a county may acquire a public interest in a private road. Effective September 1, 1981, a county with a population of 50,000 or less can acquire a public interest in a "private road" only by (1) purchase, (2) condemnation, (3) dedication, or (4) a court's final judgment of adverse possession. TEX. TRANSP. CODE §§ 281.001 & 281.002; *see*

31

*Pinebrook Properties, Ltd. v. Brookhaven Lake Prop. Owners Ass'n*, 77 S.W.3d 487, 503–04 (Tex. App.—Texarkana 2002, pet. denied) (stating "Texas Legislature changed the common law and abolished the theory of implied dedication of roads to public use in counties with a population of 50,000 or less" when it passed Chapter 281). Section 281.003(a) provides that for purposes of Chapter 281, a dedication must be "an explicit voluntary grant of the use of a private road for public purposes" that is "communicated in writing to the commissioners court of the county in which the real property is located." TEX. TRANSP. CODE § 281.003(a). A county may not assert a public interest in a private road until the county complies with Sections 281.005 and 281.006. *See id.* § 281.006.

Section 281.005 states:

(a)    After a public interest in a private road is acquired under this chapter, the commissioners court of the county in which the road is located shall record by resolution the interest in the records of the court.

(b)    The resolution must state:

    (1)    the date on which the interest was acquired; and

    (2)    the circumstance by which the interest was acquired.

*Id.* § 281.005. Section 281.006 in turn provides that a "commissioners court may not assert a public interest in a private road" until the court complies with Section 281.005 and "gives written notice to the owner of the road in person or by registered mail . . . ." *Id.* § 281.006.

**B.    Analysis**

The Tsakiris Partnerships argue that the declarations from Magness and Louis submitted in response to the District's motion for summary judgment establish that in 2009, when the purported dedication was made to Waller County, the Kingsland Extension included private roads.  Consequently, because Waller County did not provide them with notice as required by Section 218.006, they argue Waller County was thus precluded from asserting a public interest in the Kingsland Extension.

In his declaration, Magness states that in 2009, the "proposed Kingsland Extension included existing, unpaved, private roads that were being used by the property owners to access the property" and these roads are visible "on the May 21, 2009 District map prepared by Pate Engineers."  According to Magness,

> A private, unpaved road existed that provided access from Woods Road to the east which ran directly across the western most portion of the proposed Kingsland Extension. Further, several private, unpaved roads provided access to the north from this road. These north/south roads intersected the proposed Kingsland Extension as well. Further, there was a private, unpaved access road running west from the proposed Igloo Road extension that was within the eastern most portion of the Kingsland Extension. . . Neither I nor the Developers ever received notice from the Commissioners Court of the County, either in person, or by registered mail, that it was asserting a public interest in the proposed Kingsland Extension or any of the existing roads that were in existence at that time.

Louis, who made identical statements in his declaration, asserted that neither he nor any of the Developers "ever received notice from the Commissioners Court of the County, either in person, or by registered mail, that it was asserting a public interest

33

in the proposed Kingsland Extension or any of the existing roads that were in existence at that time." In Wallace's declaration, which the District submitted in support of its motion for summary judgment, Wallace stated that construction on the Kingsland Extension was not scheduled to begin until the summer of 2020.

The District argues that Louis' and Magness' declarations stating that "unidentified private roadways" intersected the Kingsland Extension provide "no evidence that the Kingsland Boulevard Easement was ever a 'private road.'" In the trial court, the District argued that the Pate Engineer's May 2009 survey on which the Tsakiris Partnerships relied actually "reveals that none of the route identified as the Kingsland Extension included any private roads," but instead "all the land at issue was undeveloped land." According to the District, the Tsakiris Partnerships admitted in their response to its summary judgment motion that the Kingsland Easement "was a proposed, private road before [the District] condemned the Kingsland Extension." The District also argues that in opposition to its motion for summary judgment, the Tsakiris Partnerships submitted the Windrose Survey and the General Plan for Igloo Road (both exhibits to the Fourth Modification of the Road Agreement) and neither depicts a "private road, only the realigned [Kingsland] easement."

The Tsakiris Partnerships pleaded Chapter 281 as an affirmative defense to the District's express dedication and easement by estoppel claims and they raised

34

this defense in opposition to the District's summary judgment motion. An affirmative defense prevents the granting of a summary judgment for the plaintiff on its own claim if each element of the affirmative defense is supported by summary judgment evidence. *Fortitude Energy, LLC v. Sooner Pipe LLC*, 564 S.W.3d 167, 180 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A plaintiff moving for summary judgment is not under any obligation to negate affirmative defenses. *Id.* A party raising an affirmative defense in opposition to a summary judgment motion must either (1) present a disputed fact issue on the movant's failure to satisfy its own summary judgment burden of proof, or (2) establish at least the existence of a fact issue on each element of its affirmative defense. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

Given the evidence presented on this issue, at most, Louis' and Magness' declarations established there were private roads crossing portions of the Kingsland Extension in 2009. But there is no evidence establishing that the Kingsland Extension was a "private road" in 2009 when the Developers purportedly dedicated it to Waller County in the Second Modification. The summary judgment reflects that the Kingsland Extension was merely a proposed public roadway in 2009 and, according to Wallace, the construction of the Kingsland Extension was not scheduled to begin until years later in 2020.

35

Chapter 281 thus did not preclude summary judgment in favor of the District because the Tsakiris Partnerships did not present evidence that the Kingsland Extension was a private road in 2009, when the easement was purportedly dedicated to Waller County. *See id.* (stating party raising affirmative defense in opposition to summary judgment motion must establish at least existence of fact issue on each element of affirmative defense).

We overrule the Tsakiris Partnerships' second issue.

### Easement by Estoppel

In their third issue, the Tsakiris Partnerships argue the trial court erred in granting summary judgment on the District's claim of easement by estoppel because there is no evidence that Louis and Magness made any purported representations to the District, and there are questions of material fact as to whether the District believed and relied to its detriment on the purported representations.

The District responds that the trial court did not err because the summary judgment evidence conclusively established that Louis and Magness represented to Wallace and Getz in 2018 and 2019 that an easement for the Kingsland Extension had been dedicated to Waller County and that further easements would be provided if necessary for realignment of the original easement. According to the District, the declarations from Wallace and Getz as well as the Ross DFA established that the District believed the representations and relied on them to its detriment because it

36

commissioned and paid for surveys and plats and executed the Ross DFA in April 2019, agreeing to construct the Kingsland Easement at its own cost.

## A.    Standard of Review and Applicable Law

An easement is the privilege to use another person's tract of land for some limited purpose. *LaTaste Enter. v. City of Addison*, 115 S.W.3d 730, 735 (Tex. App.—Dallas 2003, pet. denied). The tract of land on which the easement is imposed is the servient estate and the tract of land benefitted by the easement is the dominant estate. *See Drye Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 207 (Tex. 1962); *Hazzani, LLC v. Richardson Bus. Ctr., Ltd.*, No. 05-18-00346-CV, 2019 WL 3244175, at *5 (Tex. App.—Dallas July 19, 2019, no pet.) (mem. op.).

Generally, to be enforceable, easements must be in writing. *See Hazzani, LLC*, 2019 WL 3244175, at *5; *see also Storms v. Tuck*, 579 S.W.2d 447, 451 (Tex. 1979). An easement by estoppel, also known as easement *in pais*, is an exception designed to prevent injustice and protect innocent parties from fraud. *Storms*, 579 S.W.2d at 451; *see also S. Plains Lamesa R.R., Ltd. v. Heinrich*, 280 S.W.3d 357, 361 (Tex. App.—Amarillo 2008, no pet.) (stating equitable doctrine of easement by estoppel is also known as easement *in pais* and doctrine is exception to requirement that easements must be in writing to be enforceable). Easement by estoppel is a doctrine under which "the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted

upon by the holder of the alleged dominant estate." *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.). The doctrine is grounded on the notion that justice forbids one to gainsay his own acts or assertions which induced another to act detrimentally in reliance upon them. *See Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 861 (Tex. App.—Dallas 2007, no pet.).

To establish an easement by estoppel, a plaintiff must establish that (1) the owner of the servient estate communicated a representation, either by words or conduct, to the plaintiff—the promisee, (2) the promisee believed the representation, and (3) the promisee relied on the representation to its detriment. *See Storms*, 579 S.W.2d at 452; *Mitchell v. Garza*, 255 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). An easement by estoppel, once created, is binding upon a successor in title if reliance upon the existence of the easement continues. *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied).

"The gravity of a judicial means of acquiring an interest in land of another solely by parol evidence requires that [the doctrine of easement by] estoppel be strictly applied." *Horner*, 397 S.W.3d at 325. The estoppel should be certain, precise, and clear. *Id.* "[E]stoppel ordinarily raises a fact issue that is inappropriate for disposition by summary judgment." *Tex. Utilities Fuel Co. v. Marathon Oil Co.*, No. 11-98-00079-CV, 2000 WL 34234653, at *8 (Tex. App.—Eastland Mar. 9, 2000, no pet.) (not designated for publication).

In *Storms v. Tuck*, 579 S.W.2d 447 (Tex. 1979) the Texas Supreme Court explained that the "exact nature" of the doctrine of easement by estoppel "has not been clearly defined," noting that:

> While it is frequently applied in a few definite categories of suits involving land, the authority for its application outside those categories is "rare and nebulous."

*Id.* at 451 (citing *Drye*, 364 S.W.2d at 209). The court observed that there appears to be only "three definite categories of suits in which the doctrine will apply: (1) dedication of a street, alley, or square; (2) conveyance with reference to a map or plat; and (3) expenditures by the owner of the alleged easement for improvements on the servient estate." *Id.* at 451 n.3 (citing *Drye*, 364 S.W.2d at 209–10).

In most cases addressing an easement by estoppel, there is a servient tract that is burdened by the easement and a dominant tract that benefits from the easement's existence. *See, e.g.*, *Horner*, 397 S.W.3d at 325–26 (addressing easement by estoppel in case involving use of existing roadway across servient tract by owner of dominant tract); *Wallace v. McKinzie*, 869 S.W.2d 592, 594 (Tex. App.—Amarillo 1993, writ denied) (holding easement by estoppel existed when landlocked tract had been accessed for more than seventy years using road across appellant's property); *Halsell v. Ferguson*, 202 S.W. 317, 322 (Tex. 1918) (holding city and property owners, who had platted their land and faced lots upon certain streets and improved them, were estopped to change plat after other persons purchased property on such

39

streets in reliance upon plat).[15] We have not found, and the parties have not directed us to, cases applying the doctrine of easement by estoppel when, as here, the purported easement is for the construction of a future roadway, much less a purported representation to grant an easement for a future realigned roadway.[16]

The "exact nature and extent of the doctrine" has not been "clearly defined," however, and when considering whether an easement by estoppel has been created, courts evaluate the specific facts of each case. *See Drye*, 364 S.W.2d at 209–10. Considering the specific facts of this case, we conclude that even if easement by estoppel applied to the present circumstances, the trial court erred in granting summary judgment for the District on this basis because there is a question of material fact on the element of reliance.

---

[15] *See also* Creation of Easements in Texas by Estoppel, 4 Tex. Prac., Land Titles and Title Examination § 18.38 (3d ed.) ("The principle of estoppel supports [] the existence of easements, particularly in the case of exhibited plats or recorded maps showing dedicated streets and alleys on which grantees were induced to purchase tracts of land."); *but see Houston Lighting and Power Co. v. State*, 925 S.W.2d 312, 315 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (holding utility company acquired public utility easement by estoppel in pais when plats filed in county's real property records reflected existence of public utility easement and utility company relied to its detriment on representation in plats).

[16] We note that there is also a question as to whether the doctrine of easement by estoppel applies when there is no vendor-vendee relationship. *See Hazzani, LLC v. Richardson Bus. Ctr., Ltd.*, No. 05-18-00346-CV, 2019 WL 3244175, at *5 (Tex. App.—Dallas July 19, 2019, no pet.) (mem. op.) ("Texas courts are split as to whether a vendor-vendee relationship is required for a finding of an easement by estoppel.").

## B.  First Element:  Representation to Promisee

The Tsakiris Partnerships argue that there is no evidence that Louis or Magness made any purported representations to the District and therefore the District did not establish the first element of its claim of easement by estoppel.  They argue that the only representations made to the District "were about past representations to the County or about alleged promises to the County to provide a realigned easement to the County."

In their response to the District's motion for summary judgment, the Tsakiris Partnerships did not dispute that Louis and Magness represented to the District that an easement for the Kingsland Extension had been granted in October 2009 or that the Tsakiris Partnerships would grant any easements necessary for a realigned right of way.  Rather, the Tsakiris Partnerships argued that the District had not established it believed and relied upon such representations to its detriment.[17]  A non-movant, however, may challenge the legal sufficiency of a motion for summary judgment for

---

[17] Although the Tsakiris Partnerships also argue the District was not entitled to summary judgment because the District's evidence created a genuine issue of material fact regarding the existence of an easement for the Kingsland Extension, they did not raise this issue in the trial court and thus we cannot consider it on appeal. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Christensen v. Coursetrends, Inc.*, No. 03-12-00821-CV, 2014 WL 4388622, at *3 (Tex. App.—Austin Sept. 3, 2014, pet. denied) (mem. op.) (citing Rule 166a(c) and holding non-movant failed to preserve argument movant was not entitled to summary judgment based on genuine issue of material fact when non-movant did not raise argument in response to motion for summary judgment).

the first time on appeal. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex. 1993) (applying rule to motion for traditional summary judgment); *see also Boren v. Newport Operating, LLC*, No. 02-19-00358-CV, 2020 WL 6325814, at *2 (Tex. App.—Fort Worth Oct. 29, 2020, no pet.) (mem. op.) ("A nonmovant may file no answer at all to a motion for summary judgment and still contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment.").

We thus consider the Tsakiris Partnerships' argument that no representations were made to the District regarding the existence of an easement but conclude the trial court did not err in granting summary judgment on this basis because the District presented evidence establishing that Louis and Magness made representations to the District concerning the existence of the Kingsland Easement. We also conclude, however, that because there is issue of material fact concerning the District's reliance on such representations, the trial court erred in granting summary judgment in favor of the District on its easement by estoppel claim.

## C.    Second and Third Elements:  Belief and Reliance

The District argues it is entitled to an easement by estoppel because it expended money in reliance on the representations made by the Tsakiris Partnerships and their predecessors-in-interest concerning the existence of the easement for the Kingsland Extension. According to the District, but for such representations, it

42

would not have signed the Ross DFA in 2019, where it agreed to finance and construct the Kingsland Extension, or commissioned preparation of a final plat of the Kingsland Extension.

The Tsakiris Partnerships argue the District did not conclusively establish that it believed or relied to its detriment on any of Louis' or Magness' representations because the District incurred no additional liability or expenses by agreeing to construct the Kingsland Extension at its expense under the Ross DFA signed in April 2019. According to the Tsakiris Partnerships, the District was already obligated under the ML Dev MSA, as amended on November 8, 2010 and October 5, 2018, to reimburse ML Dev for construction of the Kingsland Extension, including any related engineering and surveying expenses. Thus, they argue, there is no evidence the District changed its position to its detriment by agreeing to construct the Kingsland Extension. The Tsakiris Partnerships also argue that the District's purported belief and reliance upon Louis' and Magness' representations was not reasonable because the District knew there was no easement for Kingsland Boulevard and that any existing easement had to be realigned.[18] The Tsakiris

---

[18] "The doctrine of estoppel in pais is an old one, and is applied only for the purpose of preventing an injury to those who, in the exercise of ordinary diligence to ascertain the truth, have been misled by false statements." *Houston & T.C.R. Co. v. Paris Milling Co.*, 240 S.W. 638, 640 (Tex. App.—Texarkana 1922, no writ). Although we have not found a recent case addressing easement by estoppel or estoppel in pais requiring that the party's reliance on the purported representations be reasonable or justified, it is well established that the doctrine of estoppel

43

Partnerships argue that at a minimum, there are fact issues on these "inherently fact-bound questions."

In his declaration, Wallace, the District's general counsel, stated that "[Louis] and Magness repeatedly represented [in their September 2018 emails] that the Kingsland Easement had been dedicated to Waller County and should realignment be necessary, the property owner(s) would provide an easement." Wallace stated that he "believed and relied upon" Louis' and Magness' representations when he "authorized preparation of a formal survey and plat of the Kingsland Easement, at the District's expense" and when the District executed the Ross DFA in April 2019 agreeing "to construct Kingsland Boulevard at the District's cost." According to Wallace, neither Louis nor Magness "disclosed to the District that the District could not rely upon their prior admissions and representations" and if Louis or Magness had told him not to rely on their previous statements, "the District would not have entered into the Ross DFA or commissioned preparation of a final plat of the Kingsland Easement."

---

generally "requires a reasonable or justified reliance on the conduct or statements of the person sought to be estopped by the person seeking the benefit of the doctrine." *Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 861–62 (Tex. App.—Dallas 2007, no pet.) (discussing equitable estoppel). We need not decide this issue, however, because there is a question of material fact as to whether the District relied to its detriment on Louis' or Magness' representations, regardless of whether such reliance was reasonable or justified.

44

In his declaration, Getz with WGA stated that WGA, the District's engineer, believed and relied upon Louis' and Magness' representations that an easement for the Kingsland Extension had been dedicated and an easement would be provided for any necessary realignment. According to Getz, Louis and Magness notified WGA in October 2018 that "they had a separate 200 acres under contract for sale to P-150 (the "P-150 Tract") which would make necessary a slight realignment of the Kingsland Easement to avoid encroachment on the P-150 Tract." Getz stated that he and WGA "believed and relied upon [Louis]' and Magness' promise to realign and prepared a diagram reflecting the realignment of the Kingsland Easement (the "2018 Diagram") []to avoid encroachment upon the P-150 Tract."

Magness stated in his declaration that ML Dev and the District executed the ML Dev MSA, under which ML Dev agreed to construct roads, water supply facilities, waste disposal facilities, and drainage facilities within the District's territory and to later sell or lease the facilities to the District. Pursuant to the MSA, the District agreed to reimburse ML Dev for all design, construction, maintenance, land, easement, and right-of-way acquisition costs, and miscellaneous costs "attributable to the construction of the District Construction Project." When the parties amended the MSA in 2010, they identified "ROADS/ROWS" and "LAND & EASEMENTS DEDICATED FOR PROJECTS" as reimbursable District Construction Projects subject to the MSA, further providing that the District would

45

be responsible for reimbursing 100% of ML Dev's reimbursable costs for these projects. Exhibit X to the first amendment is a diagram that included the Kingsland Extension.

The Ross PSA, which was executed on August 17, 2018, obligated ML Dev to build the Kingsland Extension at its own expense. After the Ross PSA was signed, P150 and the District began negotiating the Ross DFA, a development financing agreement.

On October 17, 2018, Magness sent an email to Wallace informing him that ML Dev's deal with P150 for the sale of the P150 tract was "getting to the point where [P150] will need to have a reimbursement agreement." By October 23, 2018, WGA had started "preparing a cost estimate for all reimbursable items" associated with the P150 transaction. On October 25, 2018, WGA emailed Wallace the "Preliminary Construction Cost Summary" it had prepared for the "Water, Sanitary Sewer, Paving, & Drainage Improvements to Serve Pl50 Industrial Development." In the cost summary, WGA identified the Kingsland Extension as a reimbursable "District Construction Project," and it estimated that the construction would cost $2,785,938.00, and the cost of engineering and surveying would be an additional 15%, or $417,890.70. WGA noted that, consistent with the ML Dev MSA, "[a]ll costs are reimbursable by following TCEQ requirements for publicly bidding

construction. However, the final reimbursement amount is subject to a reimbursement agreement with the District."

In his declaration, Magness stated that during a February 15, 2019 meeting of the District's Board of Directors, the District's attorney Michael Bacon "recommended that the District finance and control the construction of the Kingsland Extension because, in his words, this project 'could be better managed with the District in charge.'" The meeting minutes corroborate Magness' statement and reflect that Bacon also told the Board that "District representatives had attended multiple meetings with P150 to discuss development terms" for the Ross DFA and the "negotiations were going well." Bacon recommended that the District "take control of the [Kingsland Boulevard] project and finance it directly." The Board "agreed that the construction of Kingsland Boulevard should be a District project" and "voted unanimously to authorize the District's consultants to proceed accordingly."

In early 2019, the District commissioned WGA to prepare a formal survey and plat of the realigned Kingsland Extension. On March 22, 2019, after the Board agreed to construct and finance the Kingsland Extension and before the Ross DFA was executed, Magness emailed Getz with a copy to Louis, stating:

> Before we get into the platting of Kingsland, we need to make sure of a couple items.
>
> Contractually ML Dev is not building Kingsland.

ML Dev has agreed with P150 to relocate the road after closing.

There is a metes and bounds description of the existing easement. There will need to be a new easement and metes and bounds of the new Kingsland alignment. The county will need to abandon old easement and accept new. I would think this needs to be done before platting. And all is post closing.

On April 22, 2019, the District entered into the Ross DFA, under which "the District agreed to construct Kingsland Boulevard at the District's cost." On May 8, 2019, ML Dev and P150 executed the Third Amended Ross PSA in which they agreed that ML Dev would no longer be required to build or realign Kingsland Boulevard.

Although Wallace, the District's general counsel, averred in his declaration that the District would not have executed the Ross DFA and agreed to construct the Kingsland Extension at its own cost if Magness or Louis had told him the District could not rely on their previous representations, Magness' declaration, the terms of the Ross PSA (and related amendment), the Ross DFA and the timing of its negotiation, and the minutes from the Board's February 15, 2019 meeting raise a question of material fact as to whether the District executed the Ross DFA in reliance upon Louis' and Magness' representations as opposed to another reason, such as the District's belief that the construction of the Kingsland Extension would be better managed by the District.

48

There is also an issue of material fact as to whether the District was already obligated to reimburse ML Dev for the costs of constructing the Kingsland Extension when it executed the Ross DFA and thus whether the District relied to its detriment based on the purported representations. The District argues there is no evidence it was obligated to build the Kingsland Extension before it signed the Ross DFA or that it was obligated to reimburse ML Dev for construction of the Kingsland Extension, including the expense of a related easement, because it was only obligated to reimburse ML Dev if ML Dev submitted proof it performed and paid for a project covered by the ML Dev MSA and it is undisputed that ML Dev did not construct the Kingsland Extension, and there is no evidence ML Dev expended money for an easement associated with the construction of the Kingsland Extension. We are not persuaded by the District's argument because regardless of whether the District was ultimately required to reimburse ML Dev for construction of the Kingsland Extension, including related expenses, the issue before us is whether the District changed its position to its detriment when it agreed to construct the Kingsland Extension at its own expense.

The Tsakiris Partnerships presented evidence that the District was required to reimburse ML Dev for costs it incurred associated with constructing roads within the District's territory under the ML Dev MSA, including any engineering and surveying expenses, the District identified the construction of the Kingsland

49

Extension as a reimbursable project, and, pursuant to the Ross PSA, ML Dev was required to construct the Kingsland Extension before the February 15, 2019 meeting when the Board voted to construct the Kingsland Extension at its own expense, and the District's execution of the Ross DFA on April 22, 2019. This evidence raised a question of material fact as to whether the District, purportedly relying on Louis' and Magness' representations, incurred additional liability by agreeing to construct the Kingsland Extension at its expense and commissioning the preparation of a survey and final plat of the realigned easement. *See Tex. Utilities Fuel Co.*, 2000 WL 34234653, at *8 (stating "estoppel ordinarily raises a fact issue that is inappropriate for disposition by summary judgment").

Given the significance of the property rights at issue and the fact that easement by estoppel is a doctrine that must be "strictly applied" to the facts of each case and must be "certain, precise and clear," we cannot say that the District established conclusively its right to recovery under the doctrine of easement by estoppel based on Louis' and Magness' purported representations. *See Hazzani, LLC*, 2019 WL 3244175, at *5 (stating "gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied" and be "certain, precise and clear"); *see generally Tex. Utilities Fuel Co.*, 2000 WL 34234653, at *8 (stating "estoppel ordinarily raises a fact issue that is inappropriate for disposition by summary judgment").

50

Viewing the evidence in the light most favorable to the Tsakiris Partnerships, we conclude there are questions of material fact over whether the District relied to its detriment on any of Louis' or Magness' representations, thus precluding summary judgment on the District's easement by estoppel claim. *See Sandberg*, 600 S.W.3d at 521 (stating movant must establish its right to judgment as matter of law and courts take evidence favorable to nonmovant as true, indulge every reasonable inference and resolve any doubts in nonmovant's favor when determining whether evidence raises question of material fact).

We sustain the Tsakiris Partnerships' third issue.

### Express Dedication

The Tsakiris Partnerships argue the trial court erred in granting summary judgment for the District on its express dedication claim because the District failed to conclusively establish that the Developers made an express offer to dedicate the realigned Kingsland Easement and that Waller County accepted the offer of a realigned Kingsland Easement.[19] The District responds that it established that the Developers—the Tsakiris Partnerships' predecessors in interest—expressly

---

[19] In its order granting summary judgment, the trial court declared that the "Kingsland Easement exists as a public right of way by express dedication and by estoppel," and "[g]iven the existence of the Kingsland Easement by express dedication and estoppel, [Appellants] are entitled to no compensation for the District's condemnation of such easement." We must affirm the granting of summary judgment if the District was entitled to summary judgment on either theory.

51

dedicated the Kingsland Easement to Waller County when the Developers executed the Second Modification of the Roadway Agreement in 2009, and Waller County expressly accepted the dedication of the easement at the October 5, 2009 meeting of the County Commissioners Court when a majority of the Commissioners voted to approve the Second Modification and "to accept right-of-way easements for portions of Igloo Road and Kingsland Boulevard."

## A. Applicable Law

"Dedication" is the act of appropriating private land to the public for any general or public use. *Shelton v. Kalbow*, 489 S.W.3d 32, 44 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). "A dedication grants an easement to the general public in the land dedicated for its use." *Long Island Owner's Ass'n, Inc. v. Davidson*, 965 S.W.2d 674, 684 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (citing *Wolf v. Brass*, 72 Tex. 133, 12 S.W. 159, 160 (1888)). Once property has been dedicated to the public, "the owner of the land reserves no rights that are incompatible with the full enjoyment of the public." *Shelton*, 489 S.W.3d at 44.

Dedication can occur by express grant or by implication.[20] *See Stein v. Killough*, 53 S.W.3d 36, 42 (Tex. App.—San Antonio 2001, no pet.); *Gutierrez v. Cty. of Zapata*, 951 S.W.2d 831, 837 (Tex. App.—San Antonio 1997, no writ).

---

[20] Although the District also pleaded a claim for implied dedication, it moved for summary judgment only on its claims for express dedication and estoppel. We thus do not address the District's claim for implied dedication.

52

Generally, an express dedication is accomplished by deed or other written document. *Stein*, 53 S.W.3d at 42.

To prove an express dedication, the movant must establish that (1) the person making the dedication held fee simple title to the property and thus had the ability to dedicate the property, (2) the dedication serves a public purpose, (3) the person made either an express or implied offer to dedicate the property, and (4) the party's offer was accepted. *Shelton*, 489 S.W.3d at 44. "A dedication of private property for public use is never presumed." *Aransas Cty. v. Reif*, 532 S.W.2d 131, 134 (Tex. Civ. App.—Corpus Christi 1975, writ ref'd n.r.e.). Rather, it must be established by a declaration or act which shows a "clear and unequivocal intention on the part of the owner to presently set aside and appropriate a certain part of his land for use by the public." *Id.*; *see also Beaty v. Marshall*, No. 13-01-176-CV, 2002 WL 34214271, at *2 (Tex. App.—Corpus Christi–Edinburg Dec. 5, 2002, no pet.) (mem. op.) (same). Acceptance of a dedication for a public purpose can take many forms. A formal or express acceptance is not required. *See Stein*, 53 S.W.3d at 42 (stating express dedication accomplished by deed or other written document and acceptance of offer to dedicate does not require express acceptance and can be accomplished by public's general and customary use of property); *see also Lambright v. Trahan*, 322 S.W.3d 424, 432 (Tex. App.—Texarkana 2010, pet. denied) (stating "formal or express acceptance of a dedication by the public" is not required).

## B.    Analysis

In its motion for summary judgment, the District argued the evidence conclusively established that the Developers expressly dedicated the "original Kingsland Easement" for a public purpose when they executed the Second Modification in 2009.  In support of its argument, the District submitted evidence that Waller XYZ, one of the Developers, was the record owner of fee simple title to the property to be burdened by the Kingsland Easement, Waller XYZ was managed and controlled by Tsakiris, who signed the Second Modification on behalf of Waller XYZ, and the Kingsland Easement was intended to be used to construct, install, operate, and maintain a public roadway connecting Jordan Ranch Boulevard and Woods Road and thus served a public purpose.

The District also submitted evidence demonstrating that the Developers offered to dedicate the original Kingsland Easement on October 5, 2009 when they executed the Second Modification, which "contains the unambiguous agreement of the parties that dedication of the Kingsland Easement 'shall occur within 60 days.'" According to the District, "the 2009 Diagram, depicting the Kingsland Easement, was filed of public record in Waller County with the Second Modification."[21]  The 2009 Diagram depicts the extension of the Kingsland Boulevard to the east and west

---

[21]    The 2009 Diagram does not appear to have been attached to the Second Modification.

of Igloo Road. The District argued Waller County had expressly accepted the dedication of the easement at the October 5, 2009 Meeting of the County Commissioners Court. The meeting minutes state:

> Discuss and take action to approve 2nd Modification of Road Alignment and Construction Agreement for Igloo Road and Kingsland Boulevard. To modify Section 2.1 to read: Dedication of Right-of-Way: To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right-of-way necessary for the construction and maintenance of the Road Improvements such dedication, of 100 feet right-of-way for both Igloo and Kingsland, shall be completed within 60 days of the signing of this 2nd Modified Agreement. Said dedication will include a metes and bounds description.

The meeting minutes further state: "Discuss and take action to accept right-of-way easements for portions of Igloo Road and Kingsland Boulevard." A majority of the Commissioners voted to approve.

The District also attached a declaration from Ryan Getz, the founder of WGA, the District's engineer. In his declaration, Getz stated:

> The Second Modification of the Road Agreement, executed October 5, 2009, provides that dedication of the easements required for Kingsland Boulevard (the "Kingsland Easement") and for Igloo Road (aka Jordan Ranch Boulevard) "shall be completed within sixty days of the signing." (See, Px2)

> A diagram prepared by Pate Engineers (the "2009 Diagram"), filed of public record with the Second Modification, depicts the Kingsland Easement. (See, Px2 at VOL0077 PG937).

> . . .

55

In June 2020, and again in July 2020, the District Engineer provided Tsakiris an accurate final plat of right of way for the Kingsland Easement for execution by the Louis Tsakiris Family Partnership, Ltd and the A. Tsakiris Family Limited Partnership (the "Tsakiris Partnerships"). See, Px 32, Px33. The District Engineer advised that Waller County had approved the plat of the realigned right of way for the Kingsland Easement. See, Px32.

The plat attached to Plaintiff's Exhibit 32 and Plaintiff's Exhibit 33 describes the right of way for the realigned Kingsland Easement that the District seeks to condemn in this action. The Tsakiris Partnerships do not dispute that Waller XYZ owned the property burdened by the purported easement or that the purported easement served a public purpose. Rather, the Tsakiris Partnerships argue that the District failed to establish conclusively that the Developers made an express offer to dedicate the realigned Kingsland Easement and that Waller County accepted the offer of a realigned Kingsland Easement.

The District moved for summary judgment based on Plaintiff's Exhibit 32, arguing that the depicted easement had been dedicated to the public, and thus the Tsakiris Partnerships were not entitled to any compensation for the condemned easement. But the District's summary judgment evidence reflects that the Second Modification involved the "original" Kingsland Easement, not the realigned Kingsland Easement depicted in Plaintiff's Exhibit 32 on which the District relied. In addition, the evidence on which the District relied to establish acceptance of the

dedication reflects that Waller County accepted the original Kingsland Easement in 2009 during the October 5, 2009 Meeting of the County Commissioners Court.

In their response to the District's summary judgment motion, the Tsakiris Partnerships argued that because Waller County accepted the easement for Kingsland Boulevard in 2009, before the realigned easement was proposed, the District failed to prove Waller County's acceptance of the realigned easement, as reflected in Plaintiff's Exhibit 32. In its reply, the District argued that the September 2018 emails sent by Tsakiris and Magness to Wallace and WGA admitted the existence and dedication of the easement, as well as Tsakiris' and Magness' promise that a realigned easement would be provided if necessary. According to the District, these statements are sufficient to establish that the realigned Kingsland Easement was expressly dedicated for a public purpose because it constitutes a "declaration or some express manifestation of the purpose to devote the land to the public use" and Waller County's acceptance of the dedication does not require a formal or express act. *See Gutierrez*, 951 S.W.2d at 838, 840.

Tsakiris' and Magness' representations in the September 2018 emails that the Kingsland Easement as it existed in 2009 had been dedicated to Waller County and their promise to provide a realignment of the easement should it become necessary do not conclusively establish that the Tsakiris Partnerships dedicated the realigned easement to Waller County as reflected in Plaintiff's Exhibit 32. A "mere agreement

57

to dedicate on demand does not constitute a dedication." *Beaty*, 2002 WL 34214271, at \*2. Nor do the representations conclusively establish that Waller County accepted an offer of the realigned Kingsland Easement, much less the location and parameters of such a realigned easement. *See id.*; *see also generally Aransas Cty.*, 532 S.W.2d at 134 (stating dedication of property must be established by declaration or act showing "clear and unequivocal intention on the part of the owner to presently set aside and appropriate a certain part of his land for use by the public").

Citing to *Auto Insurance Co. of Hartford Connecticut v. United Electric Services Company*, the District argues that "the trial court was empowered to reform the original dedicated easement by slight realignment of its western end" because as "a court sitting in equity, the trial court had discretion to reform the prior express dedication of easement to reflect the true boundary because of the inequitable conduct of the Tsakiris Partnerships." 275 S.W.2d 833, 839 (Tex. App.—Fort Worth 1955, writ ref'd n.r.e.). Summary judgment, however, cannot be granted on grounds not expressly set forth in the motion, and the District did not present this argument to the trial court. *See Charles v. Dickinson Indep. Sch. Dist.*, No. 01-20-00215-CV, 2022 WL 904434, at \*11 n.2 (Tex. App.—Houston [1st Dist.] Mar. 29, 2022, no pet.) (mem. op.) ("Because summary judgment is not proper on a ground not raised in a motion for summary judgment and because we do not consider arguments raised for the first time on appeal, we decline to consider these arguments.") (citing Tex.

R. Civ. P. 166a(c); Tex. R. App. P. 33.1(a)). The District also has not cited any authority holding that a trial court has the power to reform or modify an easement in a summary judgment proceeding.[22]

Based on the evidence and arguments raised in the summary judgment proceeding, we conclude the District failed to establish conclusively that it was entitled to summary judgment on its claim for express dedication of the realigned Kingsland Easement because the District did not conclusively establish that the Tsakiris Partnerships offered to dedicate the realigned easement to Waller County, as opposed to the original easement, or that Waller County accepted the offer of the realigned easement. *See City of Keller*, 168 S.W.3d. at 816 (stating matter conclusively established if reasonable people could not differ as to conclusion to be drawn from evidence). The trial court thus erred by granting summary judgment for the District on its claim for express dedication and declaring that the Tsakiris Partnerships were not entitled to compensation for the condemnation of the realigned Kingsland Extension because the condemned property had been expressly dedicated to the public.

The trial court also erred in granting summary judgment on the District's claim for express dedication because the evidence raises material questions of fact

---

[22]     In *Auto Insurance Company of Hartford Connecticut*, the trial court reformed an insurance contract based on mutual mistake after a jury trial. 275 S.W.2d 833, 836, 828–39 (Tex. App.—Fort Worth 1955, writ ref'd n.r.e.).

over whether the Developers intended to dedicate the Kingsland Extension when they executed the Second Modification and whether Waller County accepted such an offer to dedicate. In their motion for summary judgment, the District argued that Waller County agreed to the dedication by executing the Second Modification.

On October 5, 2009, Waller County and Developers executed the Second Modification, which replaced Article 2.1 of the Road Agreement to read:

> <u>Dedication of Right of Way</u>. To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right of way necessary for the construction and maintenance of the Road Improvements. Such dedication shall be completed within sixty days of the signing of this Second Modification of Road Alignment and Construction.

Although the District interprets the terms of the Second Modification as dedicating the Kingsland Extension to Waller County, the plain language of the Second Modification can also be interpreted to create an agreement or promise that the Developers will dedicate a right of way to Waller County at some yet-to-be determined time in the future ("the Developers shall dedicate or cause to be dedicated to the County") and any dedication is conditional upon such dedication being "necessary and appropriate." *See Aransas Cnty.*, 532 S.W.2d at 134 (requiring evidence of party's "clear and unequivocal intention" to dedicate its property for public use); *see also Beaty*, 2002 WL 34214271, at *2 (stating dedication requires more than "mere agreement to dedicate on demand"). Because the pertinent language in the Second Modification purportedly dedicating the Kingsland

60

Extension is susceptible to two interpretations, the contract is ambiguous and thus creates a fact issue regarding the parties' intent. *See Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 219 (Tex. 2022). The trial court thus erred in granting summary judgment on the District's express dedication claim based on the terms of the Second Modification. *See id.* (stating ambiguous contract creates fact issue regarding parties' intent and thus "the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue") (quoting *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).

Even assuming the Developers offered to dedicate the Kingsland Extension by virtue of executing the Second Modification, the summary judgment evidence raises a genuine issue of material fact over whether Waller County accepted the offer of the Kingsland Extension in 2009. The summary judgment record reflects that on the day the Developers executed the Second Modification, Waller XYZ and Blimp Base executed a 100' Road Easement for the extension of Igloo Road and Kingsland Boulevard to the east of Igloo Road, along with a metes and bounds description of the subject property. Waller XYZ and Blimp Base, however, did not execute an easement for the proposed extension of Kingsland Boulevard to the west of Igloo Road—the Kingsland Extension. The Tsakiris Partnerships also submitted a July 10, 2012 survey of easements within the District's boundaries that was prepared by the District's surveying company, Windrose Land Services, Inc. ("Windrose"). The

61

Tsakiris Partnerships argue that the 2012 survey "clearly showed that the 100' Road Easement signed on October 5, [2009] was related to the extensions of Igloo Road and Kingsland Boulevard east of Igloo Road, not the Kingsland Extension." In his declaration, Tsakiris explained that Waller XYZ and Blimp Base did not execute an easement for the Kingsland Extension to Waller County in 2009 because neither the Developers nor Waller County thought it was necessary and appropriate to do so.

The District does not dispute that contemporaneous with execution of the Second Modification, Waller XYZ and Blimp Base executed an easement to Waller County for the extension of Kingsland Boulevard to the east of Igloo Road but did not execute an easement for the Kingsland Extension to the west of Igloo Road, or that the 2012 Windrose survey reflects only an easement for the extension of Kingsland Boulevard to the east of Igloo Road. Rather, the District argues that the easement for the extension of Kingsland Boulevard to the east of Igloo Road and the 2012 survey are immaterial because an express dedication can be made in any written document, such as the Second Modification, and thus it was not necessary for the Waller XYZ and Blimp Base to have executed a separate written easement to establish that the Partnerships dedicated the Kingsland Extension in 2009. *See Stein*, 53 S.W.3d at 42 (stating express dedication is accomplished by deed or other written document and acceptance of offer to dedicate does not require express acceptance and can be accomplished by public's general and customary use of

62

property); *see also Lambright*, 322 S.W.3d at 432 (stating "formal or express acceptance of a dedication by the public" is not required).  The District further argues Waller County "agreed to the dedication by executing the Second Modification of the Roadway Agreement" and it "expressly accepted the dedication of the easement" during the October 5, 2009, County Commissioners Court meeting as reflected in the meeting minutes, which "reflect that a majority of the County Commissioners voted 'to accept right-of-way easements for . . . Kingsland Boulevard.'"

While we agree that an express written easement is not required to establish express dedication, we disagree that evidence of the other easement is immaterial. Although an express dedication could have been accomplished by the Second Modification, the execution of a 100' Road Easement for the portion of Kingsland Boulevard to the east of Igloo Road on October 5, 2009, and the Commissioner's vote to "accept right-of-way easements for portions of Igloo Road and Kingsland Boulevard" as reflected in the 2012 survey, raise a genuine issue of material fact as to whether the offer to dedicate was accepted.  The difference between the modified language of Article 2.1 set forth in the Second Modification and the language the Commissioners voted to approve is informative.  The Second Modification modified Section 2.1 of the Road Alignment and Construction Agreement to read:

> <u>Dedication of Right of Way</u>. To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right of way necessary for the construction and maintenance of the Road Improvements. Such dedication shall be completed within sixty

days of the signing of this Second Modification of Road Alignment and Construction.

The minutes from the October 5, 2009 Commissioners Court meeting, however, state:

> Discuss and take action to approve 2nd Modification of Road Alignment and Construction Agreement for Igloo Road and Kingsland Boulevard. To modify Section 2.1 to read: Dedication of Right-of-Way: To the extent necessary and appropriate, the Developers shall dedicate or cause to be dedicated to the County the right-of-way necessary for the construction and maintenance of the Road Improvements *such dedication, of 100 feet right-of-way for both Igloo and Kingsland, shall be completed within 60 days of the signing of this 2nd Modified Agreement. Said dedication will include a metes and bounds description.* [Emphasis added.]

The meeting minutes further state: "Discuss and take action to accept right-of-way easements for portions of Igloo Road and Kingsland Boulevard." A majority of the Commissioners voted to approve.

Viewing the evidence in the light most favorable to the Tsakiris Partnerships, we conclude that the italicized language referring to the "dedication, of 100 feet right-of-way for both Igloo and Kingsland," coupled with the execution of the October 5, 2009 100' Road Easement for the portion of Kingsland Boulevard to the east of Igloo Road, raises a fact question as to whether Waller County intended to accept a dedication of the Kingsland Extension in 2009, thus precluding summary judgment on the District's express dedication claim. *See Sandberg*, 600 S.W.3d at 521 (stating movant must establish its right to judgment as matter of law and courts

64

take evidence favorable to nonmovant as true, indulge every reasonable inference and resolve any doubts in nonmovant's favor when determining whether evidence raises question of material fact).

We sustain the Tsakiris Partnerships' first issue.[23]

## Conclusion

We reverse the trial court's judgment and remand for further proceedings.


Veronica Rivas-Molloy
Justice


Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

---

[23]    Having concluded that this appeal should be remanded to the trial court for further proceedings because the District failed to prove that it is entitled to summary judgment on express dedication and easement by estoppel, we need not address the Tsakiris Partnerships' fifth issue.